# CHARLESTON.

### SIMMONS *v.* LOONEY.

Submitted January 9, 1896—Decided March 25, 1896.

1. PRINCIPAL AND AGENT—APPORTIONMENT OF PAYMENT.
    If an agent sells his own and his principal's goods in common, and collects enough to pay his principal, but not enough to pay both, and as an act of his own, indulges the purchaser, he must pay his principal, and can not apportion what he has collected between himself and his principal.

2. VOLUNTARY PAYMENT—LACK OF DUE DILIGENCE.
    If one under legal duty to ascertain, and with means to ascertain, a fact, pays money in ignorance of it, he can not recover back.

SCHILLING & STARKEY for plaintiff in error, cited 21 W. Va. 796, 800; 13 W. Va. 160 syl. pt. 11, 202, 214; 26 W. Va. 53; 16 So. Rep. 317; 5 Law. R. R. & P. § 2561; 3 Am. & Eng. Enc. Law, 321; 2 Pars. Cont. 535; 1 Wait, Act & Def. 76, 120; 22 Mo. 124; 1 Am. & Eng. Enc. Law, 371, note 4; 21 W. Va. 800; 18 W. Va. 290; 5 Gratt. 212, 226; 11 Leigh, 24; 12 Gratt. 277; 17 Gratt. 386; 5 Ala. 9; 17 Ala. 394; 66 Ala. 593; 4 Minn. 368; 11 Wis. 424; 25 Pac. Rep. 350; 26 W. Va. 49; 3 How. 554; 125 Ind. 323; 6 How. 279, 282.

J. W. C. ARMSTRONG for defendant in error, cited 1 Pars. Cont. 467; 5 Law. R. R. & P. § 2561; 19 Am. Dec. 509; 1 Wend. 355; 100 Am. Dec. 516; 22 Me. 88; 4 Gray, 518; 2 Pars. Cont. 662; 1 Law. R. R. & P. 194, 195, 196; Sto. Ag. § 430; 1 Law. R. R. & P. 130; Wells, L. & F. 642, 639; 15 Gratt. 143.

BRANNON, JUDGE:

A question has been raised whether there is any bill of exceptions, to enable us to review the case. There is a memorandum, made in term, at the close of the judgment, in the usual mode, stating that two bills were signed, sealed, and made part of the record, and a bill of exceptions signed by the judge; but, after the signature, we find appended a memorandum, signed by the judge, certifying that the certificate of facts was not presented to him for signature until more than thirty days after the term. The Court has concluded that the record of the case was made up and closed in term, and the bill then signed, as the record sets forth; and as it is the legal rule that a record is evidence of what it states of so high order that it imports absolute verity, no averment or proof to the contrary will be received. *State* v. *Vest*, 21 W. Va. 796. No evidence of inferior dignity shall contradict it. We do not think the certificate of the judge made afterwards is part of the record, to affect the antecedent, finished, closed record in the case. I am of opinion that what a judge does, under the statute allowing thirty days for a bill of exceptions, in settling and signing a bill of exceptions, would be a part of the record, because done in pursuance of law, unlike the certificate of the judge in *Sweeney* v. *Baker*, 13 W. Va. 159, which no law authorized him to make; but in this case the prior order in term asserts that the bill of exceptions was then signed. Which shall we take as stating the fact truly? I mean in a legal point of view; not that we have doubt of the truth of the fact stated by the judge in said subsequent memorandum. One states the signing of the bill as done at one time; the other, at another. We conclude that we can not overthrow the statement of the record proper with this subsequent memorandum. If that record had not shown a perfected bill of exceptions, and the record made up, then any certificate of the judge touching the matter would be evidence.

We will now consider the case. It was an action of *assumpsit* by Simmons against Looney. Looney had a contract for furnishing timber to a lumber company, and the plaintiff had a like contract with the same company; and,

as the price which Looney got for lumber was better than that of Simmons, an agreement was made between them by which Simmons was to put in his timber on Looney's contract with the company, the timber to be taken up by the company in the name of Looney, and Looney to collect the money therefor, and pay it over to Simmons as soon as collected, Looney to be paid his expenses only, and nothing more. The timber was to be paid for by the company when taken up, but, as the report would have to be sent to the company, it was expected that the money would not be realized for some thirty days after the lumber was taken up. Simmons furnished some timber to the company; Looney some—in all, two thousand eight hundred dollars, of which Looney had collected one thousand five hundred dollars. The timber delivered by Simmons was taken up in parcels at different times, amounting to seven hundred and sixty eight dollars and seventy three cents. Looney paid Simmons money at different times, but not enough to pay for all the timber furnished by Simmons. A balance remained uncollected from the lumber company. Simmons sued Looney, claiming pay for all the timber furnished by him, and a store account and due-bill against Looney. Looney did not controvert the timber account or the store account or the due-bill, so far as amounts went. There is no dispute as to facts. Looney, on the witness stand, stated that he had paid Simmons three hundred dollars more than his proportionate part of what he had collected from the lumber company. The jury found a verdict for Looney for two hundred and forty six dollars and twenty five cents, on which judgment was rendered against Simmons, and Simmons brings the case here.

The record discloses no ground to warrant this verdict save the theory that out of the one thousand five hundred dollars collected by Looney he was not bound to pay Simmons for his lumber in full, though collected more than thirty days after the delivery of the lumber, but he might apportion it between himself and Simmons according to the quantity of timber furnished by each; and that, for the balance, Simmons must wait until collection of the money yet due from the lumber company; and that on this theory

Looney had the right to recover back from Simmons what he had paid him over his ratable portion. Let us inquire whether Looney had the right to recover back from Simmons such overpayment. Looney says he paid it under mistake, because he did not know how much timber Simmons had put in. Taking it, for the sake of argument, true that when he paid, he was ignorant of what timber Simmons had furnished, we must see whether that would authorize him to ask repayment of Simmons. Here we do not have to inquire what would be the case if nothing had been collected, whether Looney is a mere unpaid agent of Simmons, and not liable until actual collection from the lumber company, except for gross negligence losing the debt, or whether he is to be treated as a purchaser, as Looney received from the lumber company more than enough to pay for Simmons' timber. If we view Looney as purchaser of Simmons' timber, of course he would have to pay at once on collection of enough to pay Simmons, for he could not indulge the lumber company at Simmons' expense, and he would be considered as indulging the company for his own lumber. If, however, we view Looney as Simmons' agent, having collected money on the timber, it was just as much collected on timber put in by Simmons as by himself; and having accepted the place of an agent, and the time for payment and a reasonable time having gone by since the delivery of the lumber, if he indulged the company, he did so on his own responsibility and for his own lumber. He might be guilty of as much negligence as he chose in collecting from the company, but he could not prejudice his principal by it. Looney assumed the burden of diligence to collect within a reasonable time, Simmons having no power to collect. Looney said that he indulged, because times were hard, and he was doing a good deal of business with the company, and wanted no trouble. That was a motive personal to himself. Could Looney delay as long as he chose from his own motives or purposes? Where would that leave Simmons' rights? Very indefinite, and at the mercy of Looney. Simmons could say to Looney: "You assented to the arrangement. You bound yourself to collect in a reasonable time. You have enough collect-

ed to pay me; and, if you indulge and neglect to collect, you ought to pay me out of what you have, and make the indulgence and failure to discharge your duty to me your own act, and not make it mine, when I do not want to indulge, because I am in distress for the money, and when the contract with the lumber company called for no such indulgence." It can not be that when an agent sells two horses, for one hundred dollars each, to be paid for at a certain time, and assumes the burden of collection, and collects one hundred dollars, and the time of payment by the purchaser has passed, that agent can divide the one hundred dollars, and retain half for himself, merely because he chooses, as his own act, to indulge, the purchaser being good, and the debt collectible. Thus, it is not material that Looney did not know when he made the payments what amount of timber Simmons had furnished, as he collected enough to pay Looney in full, and was bound to do so.

But let us suppose that the above proposition of law were wrong, and that Looney would have the right to apportion the money, and that he need not have paid as much as he did to Simmons; would he have the legal right to recover it back ? If he paid it under mistake of law that he had the right to apportion, it is clear that he could not recover it back. *Shriver* v. *Garrison*, 30 W. Va. 456 (4 S. E. 660 [points 6 and 7] ); *Beard* v. *Beard*, 25 W. Va. 486. But counsel for Looney, admitting this legal proposition in his brief, would make the case a mistake of fact, and rely on the law proposition that money paid under mistake of fact may be recovered back. The only mistake he pleads is that he did not know how much timber Simmons had furnished. This fact he was bound to know; and, as it was readily ascertainable, not to know it was negligence. It was not misrepresented to him by Simmons. By no means is it the rule that in every instance money paid in mistake or ignorance of fact may be recovered back. The fact not known must be material in the matter. And, even where the fact is material, that alone is not always enough. "It must be such as the party could not by reasonable diligence get knowledge of when he was put upon inquiry; for if, by

such reasonable diligence, he could have obtained knowledge of the fact, equity even will not relieve him, since that would be to encourage culpable negligence." So the law is stated by Judge Haymond in *Harner* v. *Price*, 17 W. Va. 523, 545, on the text of Judge Story. "So money voluntarily paid in the reasonable belief that it is due, and after investigation and the opportunity therefor, and without fraud on the part of the recipient, can not be recovered back as paid under a misapprehension." 5 Lawson, Rights, Rem. & Prac. § 2561. It was the duty of the agent, as agent, to know the rights of his principal. "Mistake of fact is a mistake not caused by neglect of legal duty on the part of the person making the mistake." 15 Am. & Eng. Enc. Law, 645; Kerr, Fraud & M. 406. I do not assert that, if there be actual ignorance of facts, neglect to ascertain them will in every case preclude correction. It will not. Kerr, Fraud & M. 415; *Bank* v. *Eltinge*, 100 Am. Dec. 516. But there is a legal duty on an agent to know what his principal is entitled to, where he can, just like it is of an administrator to know whether a legatee is entitled to a particular sum; as, if the administrator overpays, he can not recover back from the legatee except to pay creditors· *Shriver* v. *Garrison*, 30 W. Va. 456 (4 S. E. 660). Under the circumstances, he will be considered as intentionally assuming the risk, and waiving examination, and can not recover back. 1 Story, Cont. § 530.

It is inconceivable to me how it can be claimed that Looney, having it in his power to learn what Simmons' timber came to, and under duty to do so, and without misrepresentation by Simmons, could pay voluntarily and recover back, under the particular circumstances of this case.

So that, if Looney had the right to apportion the one thousand five hundred dollars, having elected not to do so, because likely he was indulgent to the lumber company, and thought he ought to pay to Simmons, he could not recover back. But, in law, he had no right to apportion.

The judgment must be reversed, and a new trial granted.