Campbell, Chief Justice,
delivered the opinion of the court:
The plaintiff owned and maintained a distillery and also a bonded warehouse, known as the Cedarbrook Distillery. It had produced at this distillery and placed in the warehouse certain distilled spirits, including the 428 packages which are referred to in this case. The distillery, warehouse, and all of the 428 packages of distilled spirits, save one package, were destroyed by accidental fire without any fraud or collusion or negligence on the part of the owner thereof, on September 22, 1920.
*729 Prior to this date of September 22, the plaintiff had given notice to the collector of internal revenue, at Louisville, that it proposed to withdraw from the bonded warehouse the 428 packages of spirits in several distinct lots and made due entries for the withdrawal thereof. Following this notice, the spirits had been regauged by a United States gauger upon order of the collector. Pursuant to its entries for withdrawal, the plaintiff from time to time delivered to the collector ten certified checks for the amount of the tax computed on the taxable gallons disclosed by the regauge. The dates of the notices and of entry for withdrawal were at different times between August 5, 1920, and September 21, 1920, both inclusive; the dates of the corresponding checks to cover were between August 9 and September 22, both inclusive.
It is stipulated by the parties that all of the certified checks were delivered to the collector of internal revenue prior to the fire and destruction of the spirits mentioned, and stamps covered by five of the checks dated August 9 to August 30, inclusive, had been received and were in possession of the United States storekeeper at the distillery, while the stamps covered by the five checks dated, two of them September 20, two of them September 21, and one of them September 22, had not been received at the distillery warehouse when the fire occurred. These five checks aggregated the sum of $31,641.28, while the earlier five checks, so far as they were applicable to the packages in question here, represented a smaller amount — approximately $4,200. Whether the stamps forwarded by the collector had been actually issued by him at the time of the fire does not appear except as to those above stated to have been in the storekeeper’s possession when the fire occurred.
The plaintiff sues for the sum of $35,993.76 as representing the amount or value of the stamps issued in obedience to the notices and entries of withdrawal, the regauge of the spirits, and payments made as stated. It refers to several statutes as granting authority for its suit, but its principal reliance is the act of May 12, 1900, 31 Stat. 177, as amended by the act of June 30, 1902, 32 Stat. 506, which authorizes *730 the Commissioner of Internal Kevenue, subject to regulations prescribed by the Secretary of the Treasury, to “ redeem such of the stamps, issued under authority of law to denote the payment of any internal-revenue tax, as may have been spoiled * * * rendered useless or unfit for the purpose intended, or for which the owner may have no use.” The redemption authorized by the act may be made by refunding “ the amount or value to the owner thereof.” The plaintiff duly applied to the commissioner for a refund of the amount of the stamps and offered to surrender the stamps upon the allowance of the claim. The commissioner rejected the claim as not being within the meaning of the statute. Plaintiff files the stamps in this court and asks judgment for the amount of them.
The stamps are severally applicable to a specified package. They can not be used on any other. package. The packages of spirits have been destroyed and the stamps are therefore of no use to the owner. The act of May 12, 1900, as amended is broad in its terms, but we do not think it authorizes a refund of the amount of the stamps here in question or the repayment to plaintiff of the amount of the taxes paid upon the distilled spirits. This latter course is what would result from a redemption of the stamps. The distilled spirits were liable to be and were taxed when they entered the distillery warehouse. See Hamilton v. Kentucky Distilleries, 288 Fed. 326, 329; Thompson case, 142 U. S. 471. This tax was to be paid when withdrawn. The payments by plaintiff were payments of this tax. The language of the statute providing for payment “ when withdrawn ” has the same meaning that the expression in the earlier acts making the tax payable upon “ removal.” See Hamilton v. Kentucky Distilleries, supra. The tax must be paid before the spirits can be withdrawn or removed. Plaintiff paid the tax before the fire which destroyed the spirits, but they were plaintiff’s property before the fire and were liable to the tax. See Farrell case, 99 U. S. 221, 224.
The act of May 27, 1872, 17 Stat. T62, authorized the Secretary of the Treasury in certain cases to abate or refund *731 taxes on distilled spirits. Where the accidental fire or other casualty without the owner’s fault had destroyed the spirits before the taxes were paid, the amount of them could be abated, and if the taxes had been paid “ since the destruction of said spirits ” the Secretary could refund the amount paid. But where the owner was indemnified by valid insurance, then to the extent of such insurance the tax could not be remitted. This statute is brought forward as sections 3221, 3222, and 3223, Revised Statutes. In the act of November 23, 1921, entitled “An act supplemental to the national prohibition act,” 42 Stat. 222, there is a provision that if distilled spirits, upon which the internal-revenue tax has not been paid, are lost by theft, accidental fire, or other casualty “ while in the possession of a common carrier,” or if lost “by theft from a distillery or other bonded warehouse,” and the owner is shown to be free from any blame, no tax shall be assessed or collected upon the distilled spirits so lost. But this exemption from tax is only allowable “ to the extent that the claimant is not indemnified ” against such loss. It therefore appears that the statutes have made special provisions for the refund of taxes on distilled spirits or for abating the taxes. These are (1) where the spirits have been accidentally destroyed before the tax is paid, (2) where the tax has been paid after the accidental destruction, (3) where they are lost by theft, etc., while in possession of a common carrier, the tax not having been paid, (4) where lost by theft from the warehouse.
Tn only one of these cases is there provision for a repayment of the tax, and that is where the tax has been paid after the accidental destruction. These acts do not provide for a case, such as we have before use, of a destruction of the distilled spirits after the payment of the tax. But they do limit the abatement or any refund by the amount of the insurance or indemnity the owner has. Whether there was any indemnity or insurance in the instant case does not appear. It may be noted, however, that section 3221, Revised Statutes, gives the Secretary of the Treasury certain powers, while section 3220, as well as the act of May 12, 1900, gives certain authority to the Commissioner of Internal Revenue. *732 We do not tbink this distinction between the acts is merely accidental. It is at least indicative of a purpose not to exempt distilled spirits from the taxes imposed .upon them except in the cases plainly specified and not to authorize a refund of the taxes paid before the spirits were destroyed.
In the Woolner case, 13 C. Cls. 355, a recovery was allowed, under the facts of that case, where it appeared that the tax had been paid twice. The stamps having been lost before their delivery to the gauger, the owner was required to pay the amount of the tax the second time in order to get his spirits removed. It was declared in the opinion (p. 364) to have been a tax paid “ excessive in amount ” and so might be refunded under section 3220, Revised Statutes. It is also said (p. 365) that the commissioner’s allowance (and he actually did allow the claim) might have been made under the provisions of section 3426, though it is admitted that this section has more special reference to other classes of stamps. But when one statute prescribes how the Secretary of the Treasury may abate or refund the tax on distilled spirits and another statute prescribes how stamps may be redeemed by the Commissioner of Internal Revenue, it does not seem to us that the latter statute takes the place of the former.
This court held in Hoffheimer case, 20 C. Cls. 371, that section 3221 gives the Secretary of the Treasury full and complete jurisdiction. And his power to act under this section was given effect in United States v. Alexander, 110 U. S. 325. The policy of the law as shown by the acts authorizing abatement or refund of distilled-spirits taxes is to limit the abatement or refund to the cases mentioned. It is said in Thompson's case, supra¡, to be the evident intention of Congress to be gathered from the statutes that the tax shall attach as soon as the spirits are produced and that this tax shall not be evaded “ except upon satisfactory proof, under section 3221, of destruction by fire or other casualty.” In the Fan-ell case, supra, reference is made to the act of May 27, 1872, and it is said: “ By that act Congress has provided a way in which a remission of the tax upon distilled liquors, casually destroyed while in the custody of a revenue officer in a bonded warehouse, may be obtained. The provision *733 of such a mode of relief indicates a purpose to exclude any other.” Plainly, the facts do not bring plaintiff’s case within the terms of this section as amended or within the terms of the revenue act of 1921, 42 Stat. 222. To allow a refund as for the amount of the stamps in question would be to do indirectly what the law does not authorize to be done directly — repay or refund the taxes paid. And not only so, but such a refund would be without regard to' any insurance the owner had, but which must be taken into the account in the cases under section 3221 and acts mentioned.
We think that the act of May 12, 1900, as amended, was not intended to embrace stamps such as those in the instant case and that the Commissioner of Internal Eevenue was not authorized to redeem them or to refund the amount or value of the stamps. One of the checks for the taxes bears date September 22, and the fire occurred on that day. But the stipulation is that the payment was before the fire. If it had been after the fire, the Secretary might have authorized a refund under the second clause of section 3221. But the court can not grant relief. The petition should be dismissed. And it is so ordered.
Graham, -Judge; Hay, Judge; Downey, Judge; and Booth, Judge, concur.