## FALLS CITY BREWING CO. v. UNITED STATES.

### No. 1789.

District Court, W. D. Kentucky.

Sept. 14, 1935.

Arthur B. Bensinger and Herman G. Handmaker, both of Louisville, Ky., for plaintiff.

Bunk Gardner, U. S. Dist. Atty., and G. Oldham Clarke, Asst. U. S. Atty., both of Louisville, Ky., for the United States.

HAMILTON, District Judge.

This case is submitted to the court on a demurrer to the plaintiff's petition. The facts relied on for recovery are briefly as follows:

The plaintiff, the Falls City Brewing Company, is a Kentucky corporation engaged in the business of manufacturing and selling beer. This proceeding is instituted pursuant to the authority given in section 24 (20) of the Judicial Code, 28 USCA § 41 (20).

The amount sought to be recovered is $5,000, with 6 per cent. interest thereon from May 20, 1933.

The Act of Jan. 11, 1934, c. 1, title 1, § 9 (a), 48 Stat. 314 (26 USCA § 506), imposed a tax of $5 a barrel on all beer brewed or manufactured on or after the effective date of the act, sold or removed for consumption or sale within the United States.

Under Rev. St. § 3342, March 3, 1875, c. 154, 18 Stat. 484 (26 USCA § 511); Rev. St. § 3343 (26 USCA § 512); Rev. St. § 3354, Act June 18, 1890, c. 431, 26 Stat. 161, Act Sept. 8, 1916, c. 463, § 406, 39 Stat. 789; Act Feb. 24, 1919, c. 18, § 627, 40 Stat. 1115 (26 USCA § 525), the tax on bottled beer is paid by stamps purchased by the brewer from the collector of internal revenue, and by the brewer surrendered to an inspector of the government when the beer is removed from the brewery to the bottling premises, if it is to be bottled.

The plaintiff operated its brewery by removing the beer from the brewing department to the bottling department through pipes. The beer is released from the brewing plant to the bottling plant by the inspector for the government upon the delivery to him of stamps for can-

cellation in the amount of $5 for each barrel to be bottled.

Between April 15 and May 20, 1933, the plaintiff procured the consent of the government inspector for the release to its bottling department of what was thought to be approximately 1,000 barrels of beer on delivery and cancellation of $5,000 in stamps. This product was bottled by the plaintiff in its bottling plant, amounting to approximately 13,400 cases. Five hundred cases were immediately sold by plaintiff to its customers, at which time it was discovered the product, due to improper manufacture, was not fit for beverage purposes. The plaintiff had returned to it the cases sold, and in the presence of the government inspector, and with his consent, the entire contents of the 13,400 cases were destroyed. The beer was unfit for human consumption at the time it was transferred from the brewing to the bottling department, and when the stamps were canceled. The regular brewmaster was ill and the product was faulty due to inexpert brewing.

The stamps representing the tax on bottled beer are not attached to containers. Rev. St. § 3354, Act June 18, 1890, c. 431, 26 Stat. 161, Act Sept. 8, 1916, c. 463, § 406, 39 Stat. 789, Act Feb. 24, 1919, c. 18, § 627, 40 Stat. 1115 (26 USCA § 525), provides that the beer may be removed from the vats in the brewery by way of a pipe line or other conduit to another building for the sole purpose of bottling. The stamps representing the tax are canceled or defaced by the collector or deputy in the presence of the brewer or his agent before the beer is permitted to flow from the vat through the pipe. The tax becomes due and payable in fact before the bottling is done.

The brewer determines whether or not the product he proposes to bottle is beer, and after it passes from the vat into the bottling plant, there is no government supervision. The government measures quantity, without reference to quality.

Rev. St. § 3347 (26 USCA § 518) provides that damaged or soured beer incapable of use as beer may be removed from the vat in the brewery to some other place for manufacturing purposes, sale, or destruction without payment of tax; provided, however, the cask or containers in which it is removed shall be not less than one barrel and the nature of the contents marked thereon. Of course, the brewer can remanufacture the soured or damaged product without the payment of tax, if done before bottling.

The Act of May 12, 1900, c. 393, § 1, 31 Stat. 177, Act June 30, 1902, c. 1327, 32 Stat. 506, Act June 2, 1924, c. 234, § 1013 (a), 43 Stat. 343 (26 USCA § 1174), provides the Commissioner of Internal Revenue may make allowances for or redeem stamps which have been spoiled, destroyed, or rendered useless or unfit for the purposes intended, or for which the owner may have no use, or which through mistakes may have been improperly or unnecessarily used, or where the rates or duties represented thereby have been excessive in amount, paid in error, or in any manner wrongfully collected. This statute is broad in its terms, but it must be read in connection with other statutes providing for the method and manner of collecting the tax. As heretofore pointed out, the brewer has complete control over the product until he wishes to remove it from vat to place it in bottles or kegs. If the beer is spoiled from any cause, so as to make it incapable of use, it may be taken out of the vat and reworked or destroyed without the payment of the tax.

The law provides ample opportunity for the brewer to determine the taxability of the product before it is removed from government supervision.

The alleged facts in this case show that the beer returned and destroyed was the identical beer for which the stamps were purchased and recovery sought. However, this court thinks this insufficient to support a recovery. The law contemplates the taxability of the beer shall be determined and the tax paid before it leaves the premises for bottling. When the brewer determines the fact that it is fit for removal from the premises to the bottling plant and pays the tax, he is not authorized under the law to have a redetermination of its quality.

The expressions in the statute of refundment "through mistake" or "unnecessarily used" do not authorize the court to relieve against all mistakes or errors. These expressions are not easy of definition.

Mistakes creep into many transactions and the law usually does not relieve against

the neglect of a legal duty on the part of the person making the mistake. San Diego Land Co. v. La Presa School District, 122 Cal. 98, 100, 54 P. 528; Lowe v. Wells Fargo & Co. Express, 78 Kan. 105, 96 P. 74, 75; Simmons v. Looney, 41 W. Va. 738, 742, 24 S. E. 677.

A legal duty rested on the plaintiff in this case to determine the taxability of the product and to deliver to deputy collector stamps sufficient to pay the tax. The mistake was made by the plaintiff and one from which the statute does not give relief.

In the recent case of Dawson's Brewery, Inc., v. United States (D. C. Mass.) 11 F. Supp. 1020, decided March 22, 1935, the court sustained a demurrer to the taxpayer's suit to recover tax paid on 3.2 per cent. beer removed for consumption or sale and which became unmerchantable after being bottled. In the case of Julius Kessler & Co. v. United States, 61 Ct. Cl. 723, certiorari denied 273 U. S. 700, 47 S. Ct. 95, 71 L. Ed. 847, the court denied recovery against the United States for cost of distilled spirits stamps which had been purchased and numbered for particular packages, which packages were destroyed by fire before attached.

These cases are not directly in point with the case at bar, but are closely analogous to it.

Denial of recovery in this case, under the facts stated in the petition, would seem inequitable. The plaintiff has received no benefit whatever for the sums paid the United States for taxes, but the United States has the right to name the conditions under which it may be sued, and in determining tax liability in the first instance, the taxpayer should exercise due caution in ascertaining the facts as to taxability. The plaintiff in this case was accorded full opportunity to avoid the payment of tax on a product that was not in fact taxable. Its agents failed to exercise due care, and if refunds were permitted growing out of such transactions, it would be easy to simulate facts to obtain refunds.

I am of the opinion the demurrer to the petition should be sustained and the plaintiff declining to plead further, an order shall be entered dismissing the petition.