214 N.W.2d 493 (1974)
191 Neb. 212
FEDERATED MUTUAL INSURANCE COMPANY, Appellant,
v.
GOOD SAMARITAN HOSPITAL, Appellee.
No. 39012.
Supreme Court of Nebraska.
January 31, 1974.
Tye, Worlock, Tye, Jacobsen & Orr and Kenneth C. Fritzler, II, Kearney, for appellant.
William T. Oakes, Robert F. Craig, of Kennedy, Holland, DeLacy & Svoboda, Omaha, Ward W. Minor, Kearney, for appellee.
Heard before WHITE, C. J., McCOWN, and NEWTON, JJ., and LYNCH and WARREN, District Judges.
WARREN, District Judge.
This is a suit by Federated Mutual Insurance Company against the Good Samaritan Hospital, Kearney, Nebraska, to recover an $1,959.17 overpayment on group hospital insurance policies paid directly by plaintiff to the defendant hospital pursuant to assignments by plaintiff's insured. The parties stipulated to the facts and each moved for summary judgment. The trial court found generally for the defendant *494 hospital and dismissed plaintiff's petition. Plaintiff has appealed. We affirm.
The parties stipulated to all the facts. The defendant hospital performed hospital and medical services for plaintiff's insured, Gary Bemis, between October 7, 1968, and April 13, 1969, of the reasonable value of $13,915.20. Plaintiff's insured assigned his policy benefits to defendant and the total of those policy benefits was $12,047.30. Due to its own mistake, plaintiff paid defendant directly by three drafts a total of $19,822.78, which was $7,775.48 more than plaintiff's total liability to its insured under its group health and accident and major medical insurance policies. The last payment to defendant was made by draft dated July 9, 1969. In the latter part of 1969, plaintiff requested that the defendant hospital refund the $7,775.48 overpayment. In response, defendant did on January 19, 1970, remit the sum of $5,816.31 to plaintiff, but retained the net policy overpayment of $1,959.17 already applied to the balance of the Gary Bemis hospital bill.
The stipulation of facts establishes several points which narrow the scope of the question involved, namely: (1) The overpayment by plaintiff was made solely due to plaintiff's own mistake and lack of care; (2) the defendant hospital made no misrepresentation to induce the overpayment; (3) defendant acted in good faith without prior knowledge of the mistake in receiving the overpayment; and (4) there is no evidence that defendant, in reliance upon the mistaken payment, changed its position to its detriment.
Plaintiff contends that under the general principle that a person wrongly deprived of his property is entitled to restitution, it is well settled that an insurer is entitled to restitution of payments made under a mistake, and cites as the general rule: "An insurer who made a payment under a mistake of fact may, as a rule, recover such payment, even if its mistake was due to its lack of care, unless the payee has so changed his position that it would be unjust to require a refund." Annotation, 167 A.L.R. 472 (1947). "A person who has entered into a contract binding upon him and has paid money to the other party thereto under an erroneous belief induced by a mistake of fact that the terms of the contract required such payment, is entitled to restitution from the other, except where the mistake is only as to the time of payment." Restatement, Restitution, § 18, p. 82 (1937).
We have no quarrel with those broad principles. The controlling factor here, however, is that in cases involving payments on insurance policies we must distinguish between mistaken payments made to the insured from whom the insurer seeks to recover, and those payments made by the insurer to an innocent third party creditor of the insured.
An earlier A.L.R. note covers the specific point. "It is also settled that where money is paid to another under a mistake of fact, that is, on the mistaken supposition of the existence of a specific fact which would entitle the other to the money, and would not have been paid had it been known to payor that the fact was otherwise, it may be recovered. The ground on which this rule rests is that money paid through misapprehension of facts, in equity and good conscience, belongs to the person who paid it. 21 R.C.L. p. 164. * * * But according to numerous cases this rule as to recovery of payments made under a mistake of fact does not apply where, as a result of a mistake or fraud between the original parties, money is paid by one of them on account of the other to a third party (directly or through the intervention of the other), who receives the same in good faith without knowledge of the mistake or fraud, in payment of a claim by him against the latter. In such case, by the overwhelming weight of authority, no recovery may be had against such third party." Annotation, 114 A.L.R. 384 (1938).
"The principle that a person who innocently has acquired the title (here, money) *495 to something for which he has paid value is under no duty to restore it to one who would be entitled to reclaim it if the one receiving it had not been innocent or had not obtained the title or had not paid value therefor, is of wide application, being a limitation upon the principle that a person who has been wrongly deprived of his things is entitled to restitution. This limitation involves no moral issue, since it merely creates convenient rules for determining which of two innocent persons should bear a loss which must be borne by someone." First State Bank of Oregon v. Peoples Nat. Bank of Washington, 254 Or. 309, 459 P.2d 984 (1969).
In Vermont Mutual Fire Ins. Co. v. Van Dyke, 105 Vt. 257, 165 A. 906 (1933), the plaintiff sought to recover for payments made to a mortgagee of the insured for a fire loss. After payment had been made it was discovered that in his claim the insured had made deliberate false statements as to the encumbrances on the property as well as to other insurance coverage. Of the insurance company's claim against the mortgagee, the court stated: "It does not follow, however, that this suit can be maintained. The rule by which a recovery could be had from Paradis (the insured) is, ordinarily, limited to payments inter partes and has no application to third persons to whom a debtor has paid what he supposed he owed his creditor. The rule is thus stated by Prof. Williston: `When A, under a mistaken belief in his liability to B, on direction of the latter, pays C a claim which C has against B, A cannot recover the payment from C. If the payment was voluntarily and intentionally paid by A to C to satisfy the latter's claim against B, and C had a genuine claim against B, it seems clear that no recovery should be allowed. C is a purchaser of the money for value and in good faith.' 3 Williston, Contracts, § 1574. * * * In such cases, when the money is received by C, his rights are just what they would be if he had received it from B * * *."
The American Law Institute states the specific rule applicable here: "A creditor of another or one having a lien on another's property who has received from a third person any benefit in discharge of the debt or lien, is under no duty to make restitution therefor, although the discharge was given by mistake of the transferor as to his interests or duties, if the transferee made no misrepresentation and did not have notice of the transferor's mistake." Restatement, Restitution, § 14(1), p. 55 (1937).
Here, the payment to the defendant hospital was made solely due to plaintiff's own mistake. Defendant made no misrepresentations. Plaintiff knew its own policy provisions. Defendant, having the insured's valid assignment and no notice or knowledge of the mistake, was entirely justified in receiving the payment. When the mistake was discovered, defendant retained only the amount due it from the insured for services it performed. It was therefore not unjustly enriched. We regard the status of the defendant creditor exactly as though plaintiff had made the overpayment to its insured, and the insured had then paid his debt directly to defendant. Defendant here was not required to show a change of position in reliance and to its detriment, because it was in the position of a bona fide purchaser for value.
The widespread use of assignments of policy benefits to hospitals by patients is well known and is recognized by the health insurance industry. To subject a hospital to possible refund liability if the insurer later discovers a mistaken overpayment, lasting until all such claims were barred by the statutes of limitation, would be to place an undue burden of contingent liability on such institutions. Hospitals would be safe only by requiring insurers to pay benefits directly to the insured patient, and then by accepting payment directly from the patient. By this ruling, we place the burden for determining the limits of policy liability squarely upon the only party (as between *496 the insurer and the assignee hospital) in a position to know the policy provisions and its liability under that contract of insurance. Someone must suffer the loss, and as between plaintiff insurer and defendant hospital, the party making the mistake should bear that loss.
A creditor who has innocently received payment of a debt from a third party is under no duty to make restitution to the third party if it is later discovered that the third party had no responsibility to make the payment and payment was made solely because of the third party's mistake.
Plaintiff, for reasons not shown by the record, did not join its insured as a party defendant in attempting recovery of its overpayment, and we are therefore not called upon to rule as to the right of an insurer to recover from its insured for overpayments mistakenly made to insured's third party creditor.
For the reasons stated, the judgment of the trial court is affirmed.
Affirmed.