[No. B066833. Second Dist., Div. One. July 31, 1992.]

CITY OF HOPE NATIONAL MEDICAL CENTER, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
WESTERN LIFE INSURANCE COMPANY, Real Party in Interest.

**COUNSEL**

Manatt, Phelps, Phillips & Kantor, Robert E. Hinerfeld, Barry S. Landsberg and Lisa M. Rockwell for Petitioner.

No appearance for Respondent.

Vernon E. Leverty for Real Party in Interest.

## OPINION

VOGEL, J.—We issued an alternative writ (order to show cause) to consider an issue of first impression in California—whether an insurer may obtain restitution of money paid by mistake to a hospital standing as a bona fide creditor of its insured patient. Our answer is no.

### FACTS

City of Hope National Medical Center provided medical care to Dominic Constanti and, having obtained a standard assignment from Constanti authorizing direct payment to the hospital, City of Hope billed and was paid by Constanti's insurer, Western Life Insurance Company. Western Life later decided Constanti's treatment was experimental and, as such, not covered by his policy. When City of Hope refused Western Life's request for a refund, Western Life sued City of Hope for declaratory relief, breach of contract, unjust enrichment and conversion. City of Hope answered and later moved for summary judgment, contending an insurer is not entitled to reimbursement of payments made to a hospital unless the payments were induced by the hospital's fraudulent conduct. ■ The trial court denied the motion and this petition followed.[1]

### DISCUSSION

■ No California case addresses the narrow issue presented on these facts—whether, in the absence of fraud, an insurer may recover from a health-care provider payments made under the mistaken belief that the patient's treatment was covered under a policy issued by the insurer to the patient. Cases from other jurisdictions persuade us to say no.

### I.

■ As a general rule, equitable concepts of unjust enrichment dictate that when a payment is made based upon a mistake of fact, the payor is

---

[1]None of the facts are disputed. To the extent Western Life's separate statement (Code Civ. Proc., § 437c, subd. (b)) asserts a lack of knowledge and a claim that a fact is therefore "disputed," that is not enough. Western Life did not request a continuance to conduct further discovery (Code Civ. Proc., § 437c, subd. (h)) or otherwise explain its ignorance which, thus asserted, sounds more imagined than real.

entitled to restitution unless the payee has, in reliance on the payment, materially changed its position. (Rest., Restitution (1937) § 1.) Restitution will be denied, however, if the mistaken payment is made to a bona fide creditor of a third person—a creditor without fault because it made no misrepresentations to the payor and because it had no notice of the payor's mistake at the time the payment was made. (Rest., Restitution, *supra*, § 14, subd. (1); see *Holmes* v. *Steele* (1969) 269 Cal.App.2d 675, 678-679 [75 Cal.Rptr. 216].) Stated plainly, if it's your mistake, you get to pay for it—unless the recipient misled you or accepted the payment knowing you didn't owe it.

## II.

Nebraska, Texas, and Mississippi have applied this rule in cases indistinguishable from the one now before us.

In *Federated Mutual Ins. Co.* v. *Good Samaritan Hosp.* (1974) 191 Neb. 212 [214 N.W.2d 493], a hospital provided medical care to a patient and, pursuant to the patient's assignment of benefits, billed the insurer for an amount exceeding the benefits due to the patient under his policy. By mistake, the insurer paid the full amount billed. When it realized its mistake, the insurer requested a refund. The hospital refunded part of the overpayment but kept $1,959.17 previously applied to the patient's bill and the insurer sued for that amount. The trial court granted the hospital's motion for summary judgment, and the Nebraska Supreme Court affirmed.[2]

The Nebraska Supreme Court explained, succinctly, that "[t]he widespread use of assignments of policy benefits to hospitals by patients is well known and is recognized by the health insurance industry. To subject a hospital to possible refund liability if the insurer later discovers a mistaken overpayment, lasting until all such claims were barred by the statutes of limitation, would be to place an undue burden of contingent liability on such institutions. Hospitals would be safe only by requiring insurers to pay benefits directly to the insured patient, and then by accepting payment directly from the patient. By this ruling, we place the burden for determining the limits of policy liability squarely upon the only party (as between the insurer and the

---

[2]As summarized by the Nebraska Supreme Court, "the payment to the . . . hospital was made solely due to [the insurer's] own mistake. [The hospital] made no misrepresentations. [The insurer] knew its own policy provisions. [The hospital], having the insured's valid assignment and no notice or knowledge of the mistake, was entirely justified in receiving the payment. When the mistake was discovered, [the hospital] retained only the amount due it from the insured for services it performed. It was therefore not unjustly enriched." (214 N.W.2d at p. 495.)

assignee hospital) in a position to know the policy provisions and its liability under that contract of insurance. Someone must suffer the loss, and as between [the] insurer and [the] hospital, the party making the mistake should bear that loss." (214 N.W.2d at pp. 495-496.)

The Texas Court of Appeals agreed. In *Lincoln Nat. Life Ins. v. Brown Schools* (Tex.Civ.App. 1988) 757 S.W.2d 411, the insurer mistakenly overpaid a health care provider for services rendered to its insured (the mistake was that part of the services were rendered after the policy expired). After reciting the general rules of restitution (pt. I, *ante*), the Texas court looked to the Nebraska Supreme Court's analysis in *Federated Mutual Ins. Co. v. Good Samaritan Hosp.*, *supra*, 214 N.W.2d 493, and adopted that approach. "Here, [the insurer] knew its own policy payment provisions, but failed to notify [the health care provider] as to these provisions; and [the insurer] alone made the mistake of paying beyond its responsibility. [The health care provider] made no misrepresentations, had no knowledge or notice of [the insurer's] mistake, extended valuable services based on the assignment of payment by the insured, was not unjustly enriched, and simply had no reason to suspect that any of the payments for services rendered were in error. In the normal course of such business, the hospital has no responsibility to determine if an insurance carrier is properly tending to its business." (*Lincoln Nat. Life Ins. v. Brown Schools*, *supra*, 757 S.W.2d at p. 414.)

A District Court in Mississippi also agreed. In *National Ben. Administrators v. MMHRC* (S.D.Miss. 1990) 748 F.Supp. 459, on facts facially more complex but substantively indistinguishable, the court followed *Lincoln Nat. Life Ins. v. Brown Schools*, *supra*, 757 S.W.2d at page 415. (*National Ben. Administrators v. MMHRC*, *supra*, 748 F.Supp. at pp. 465-466.) In our view, these cases are logically and legally correct and we reach the same result. (See also Annot., Right of insurer to restitution of payments made under mistake. (1945) 167 A.L.R. 470.)

### III.

We reject Western Life's suggestion that general principles governing assignments (e.g., that the hospital, as an assignee, cannot obtain more than that which its assignor, the insured, was entitled to under the policy) dictate a different result. The identical argument was considered and, in our view, properly rejected in *Lincoln Nat. Life Ins. v. Brown Schools*, *supra*, 757 S.W.2d at page 414: "[W]e have no real quarrel with the general principle of restitution and strict contractual assignment law as stated by [the insurer],

but we do not view this as an issue to be determined strictly by the law relevant to assignment of contracts. The assignment in this case was not a formal assignment of the insurance contract to [the health care provider]. Rather, it was the usual insurance benefits assignment in hospital cases which merely facilitated the payment of the insured's debt to his [health care provider]. Regardless of the contractual vehicle which created it, the problem is one covered by equitable principles of restitution."

## IV.

■ We also reject Western Life's contention that, assuming it is stuck with the rules of restitution, it ought to have been permitted to urge fraud as a defense to City of Hope's motion for summary judgment. No fraud claim is raised by Western Life's complaint, directly or indirectly, and it therefore was not entitled to oppose City of Hope's summary judgment motion with a claim of fraud. (*Robinson* v. *Hewlett-Packard Corp.* (1986) 183 Cal.App.3d 1108, 1132 [228 Cal.Rptr. 591] [a plaintiff opposing summary judgment may not advance a new unpleaded legal theory to defeat the motion]; *Cochran* v. *Linn* (1984) 159 Cal.App.3d 245, 250 [205 Cal.Rptr. 550].) This is so notwithstanding Western Life's assertion that it would have had to be "clairvoyant" to draft its complaint in anticipation of City of Hope's "innocent third-party argument." Clairvoyance was not required. ■ ■ ■
■ A little legal research would have disclosed the three cases directly on point and we must assume that fraud would have indeed been pleaded if supported by the facts.[3]

---

[3]The fraud theory asserted for the first time in opposition to City of Hope's summary judgment motion is based upon three "facts" set forth in Western Life's separate statement— that "[b]ut for City of Hope's failure, in its submission of Constanti's claim to Western Life, to specify treatment with IL-2 and LAK, Western Life would not have paid the claim"; that "City of Hope's cancer specialists are well aware of which treatments for cancers are generally accepted by insurance companies, including treatments with IL-E LAK"; and that "[t]he payment of Western Life to City of Hope insurance proceeds [*sic*] for the treatment of Constanti from September 6, 1988, was contrary to the terms of the Western Life policy applicable to Constanti."

Assuming it could be raised at this stage, these "facts" don't come close to establishing fraud and thus do not create a triable issue of fact. We are not told whether there was an affirmative misrepresentation on a claim form calling for disclosure of specific drugs or types of treatment. There is no claim of intentional conduct and justifiable reliance is not mentioned. (See 5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 676, p. 778; *Lacher* v. *Superior Court* (1991) 230 Cal.App.3d 1038, 1046 [281 Cal.Rptr. 640]; *United Community Church* v. *Garcin* (1991) 231 Cal.App.3d 327, 337 [282 Cal.Rptr. 368] [if it is not in the separate statement, it does not exist].)

## DISPOSITION

Let a writ of mandate issue directing the trial court to (1) vacate its order denying City of Hope's motion for summary judgment and (2) enter summary judgment in favor of City of Hope.

Spencer, P. J., and Ortega, J., concurred.

The petition of real party in interest for review by the Supreme Court was denied October 29, 1992.