**ST. MARY'S MEDICAL CENTER, INC., Appellant–Defendant,**

v.

**UNITED FARM BUREAU FAMILY LIFE INSURANCE COMPANY, Appellee–Plaintiff.**

**No. 82A05-9307-CV-253.**

Court of Appeals of Indiana, First District.

Dec. 6, 1993.

Gary K. Price, Ziemer, Stayman, Weitzel & Shoulders, Evansville, for appellant-defendant.

Donald R. Wright, Wright, Evans & Daly, Evansville, for appellee-plaintiff.

NAJAM, Judge.

### STATEMENT OF THE CASE

St. Mary's Medical Center, Inc., ("St. Mary's") appeals from the trial court's judgment granting restitution to United Farm Bureau Family Life Insurance Co. ("Farm Bureau") for a medical insurance payment that Farm Bureau made to St. Mary's under a mistake of fact. Elizabeth Munford ("Munford") assigned her Farm Bureau health insurance benefits to St. Mary's. After paying the claim, Farm Bureau discovered that Munford was no longer an insured and requested return of the payment. St. Mary's refused, Farm Bureau filed suit and the trial court granted restitution. St. Mary's contends Farm Bureau is not entitled to restitution because St. Mary's is an "innocent third party creditor."

We agree and reverse.[1]

### ISSUE

The question presented is whether Farm Bureau is entitled to restitution from St. Mary's for a payment made by mistake under an assignment of benefits for medical services that St. Mary's provided to Farm Bureau's former insured.

### FACTS

Trial was held on stipulated facts on June 17, 1993, in the Vanderburgh Superior Court. The facts disclose that on January 23, 1991, Munford was admitted to St. Mary's as an outpatient. She listed Farm Bureau as her insurance carrier and assigned her insurance benefits directly to St. Mary's. While a patient of St. Mary's, Munford incurred medical expenses in the amount of $3,836.47. On February 5, 1991, St. Mary's submitted a claim to Farm Bureau for Munford's medical expenses.

---

1. We heard oral argument on November 10, 1993, in Indianapolis.

Thereafter, Farm Bureau made partial payment to St. Mary's in the amount of $3,685.87, which St. Mary's applied to Munford's bill, leaving a small unpaid balance.

After making payment to St. Mary's, Farm Bureau discovered that Munford's insurance coverage had lapsed on December 1, 1990, nearly two months prior to her admission. Farm Bureau then notified St. Mary's of the mistaken payment and requested a refund. St. Mary's had no knowledge of the lapse in Munford's coverage until notified by Farm Bureau. In addition, St. Mary's made no misrepresentations to induce payment by Farm Bureau on Munford's behalf.

On March 29, 1991, and again on May 21, 1991, Farm Bureau requested that St. Mary's refund the $3,685.87 payment. St. Mary's refused, advising Farm Bureau that it was not St. Mary's policy to refund payment for medical services rendered. Farm Bureau filed a complaint against St. Mary's on February 26, 1992. The complaint alleged a mistake of fact as to Munford's insurance coverage and prayed for restitution of the amount paid to St. Mary's. The trial court granted restitution, and St. Mary's appeals.

## DISCUSSION AND DECISION

St. Mary's asserts it is an innocent third party creditor and, thus, Farm Bureau is not entitled to restitution because (1) the payment was made solely due to Farm Bureau's mistake, (2) St. Mary's made no misrepresentations to induce the payment, and (3) St. Mary's acted in good faith without prior knowledge of Farm Bureau's mistake. Our research has failed to disclose any Indiana authority on innocent third party creditors in this context. While this is a case of first impression in Indiana, other jurisdictions have addressed the issue. St. Mary's asks us to adopt an innocent third party creditor exception to the general principle of restitution that a payor is entitled to recover from the payee when a payment is made under a mistake of fact that a contract or other obligation required the payment. The exception applies when the payee has not been unjustly enriched. St. Mary's contends the exception should apply here.

### General Rule of Restitution

■ It is generally recognized in the law of restitution that if one party pays money to another party under a mistake of fact that a contract or other obligation required such payment, the payor is entitled to restitution. *See Restatement of Restitution* § 18 (1937). Restitution in such cases is grounded in the equitable principle that one who has paid money to another who is not entitled to have it should not suffer unconscionable loss nor unjustly enrich the other. *See id.* at § 1. Unjust enrichment is typically regarded as a prerequisite to restitution. *Id.; National Benefit Administrators v. MMHRC* (S.D.Miss.1990), 748 F.Supp. 459, 465.[2]

■ In a number of cases applying these general principles, an insurer has sought restitution for payment made under a mistake of fact that the terms of a health or hospitalization insurance contract required such payment. The general rule in such cases is that the insurer is entitled to restitution from the payee, even though the insurer's mistake was due to its own lack of care. However, the rule has been subject to limitation and exception under the following circumstances: where the payee has so changed his position that it would be inequitable to require him to make restitution; where at the time payment was made, there was some doubt as to the existence of the fact from which the obligation of the

---

**2.** The Restatement of Restitution, § 1 comment a (1937), states that:

"A person is enriched if he has received a benefit (see Comment b). A person is unjustly enriched if the retention of the benefit would be unjust (see Comment c). A person obtains restitution when he is restored to the position he formerly occupied either by the return of something which he formerly had or by the receipt of its equivalent in money. Ordinarily, the measure of restitution is the amount of enrichment received (see Comment d), but as stated in Comment e, if the loss suffered differs from the amount of benefit received, the measure of restitution may be more or less than the loss suffered or more or less than the enrichment."

insurer arose; and where the payee is an innocent third party creditor of the insured who neither had notice of the insurer's mistake nor made any misrepresentations to induce the payment. *Monroe Financial Corp. v. DiSilvestro* (1988), Ind.App., 529 N.E.2d 379, 384, *trans. denied; Barker v. Federated Life Ins. Co.* (1965), 111 Ga.App. 171, 173, 141 S.E.2d 206, 207; *Federated Mutual Ins. Co. v. Good Samaritan Hospital* (1974), 191 Neb. 212, 214–15, 214 N.W.2d 493, 495; *see also* Annotation, *Right of Insurer Under Health or Hospitalization Policy To Restitution of Payments Made Under Mistake,* 79 A.L.R.3d 1113, 1116–17 (1977).

St. Mary's appeals based upon the innocent third party creditor exception to the general rule of restitution for payment made under mistake of fact. This exception, not previously recognized in Indiana, derives from the fact that there has been no unjust enrichment of the innocent third party creditor. *National Benefit Administrators,* 748 F.Supp. at 465, (citing *Good Samaritan Hospital,* 214 N.W.2d at 495 and *Lincoln National Life Insurance Co. v. Brown Schools, Inc.* (1988), Tex.App., 757 S.W.2d 411, 414). The creditor is not unjustly enriched because the creditor is actually owed the money it receives and has exchanged value for the right to receive the money. *Id.* On this theory, St. Mary's contends that it gave value to Munford in the form of medical services, that it was entitled to receive payment for such services and, therefore, was not unjustly enriched. In addition, St. Mary's contends that it made no misrepresentations and acted in good faith without knowledge of Farm Bureau's mistake. Thus, St. Mary's asserts that it is an innocent third party creditor of Munford and should not be required to make restitution to Farm Bureau.

Farm Bureau responds that in Indiana the doctrine of restitution does not require unjust enrichment as a prerequisite and that Indiana law only recognizes the "change of position" exception to restitution, which does not apply in this instance. While Farm Bureau is correct in observing that our case law in this area has only adopted the change of position exception, our appellate courts have not squarely confronted a fact situation such as this one and have not had an opportunity to consider any further limitations on the rule. Farm Bureau contends there is no evidence of detrimental reliance, and in oral argument St. Mary's conceded that the change of position exception, which is based upon detrimental reliance, does not apply in this instance. Thus, we are only concerned with whether the innocent third party creditor exception should be recognized in Indiana.

## Innocent Third Party Creditor Exception

St. Mary's cites a number of cases from other jurisdictions to support its argument, including *Good Samaritan Hospital, Lincoln National Life,* and *National Benefit Administrators.* In *Good Samaritan Hospital,* the Nebraska Supreme Court concluded that the hospital was under no duty to make restitution to the insurance company where overpayments of the insured's medical bill were paid directly to the hospital through an assignment of benefits by the insured and due solely to the insurer's mistake. *Id.* at 495. The court held that the insurance carrier was not entitled to restitution because the hospital made no misrepresentations to induce the payment and the hospital acted in good faith without prior knowledge of the mistake. *Id.*

The decision in *Good Samaritan Hospital* was based on the rationale of Section 14(1) of the Restatement of Restitution, which provides that:

> "A creditor of another or one having a lien on another's property who has received from a third person any benefit in discharge of the debt or lien, is under *no* duty to make restitution therefor, although the discharge was given by mistake of the transferor as to his interests or duties, if the transferee made no misrepresentations and did not have notice of the transferor's mistake."

The court likened the hospital to a bona fide purchaser for value, stating that it was not required to show a change of position

in reliance and to its detriment.[3] *Id.* Thus, the court determined that the hospital did not have to fall within the change of position exception to avoid making restitution to the insurer.

Further, the court noted the health insurance industry's "widespread use of assignments of policy benefits to hospitals by patients," stating that:

"To subject a hospital to possible refund liability if the insurer later discovers a mistaken overpayment, lasting until all such claims are barred by the statute of limitations, would be to place an undue burden of contingent liability on such institutions. * * * By this ruling, we place the burden for determining the limits of policy liability squarely upon the only party (as between the insurer and the assignee hospital) in a position to know the policy provisions and its liability under that contract of insurance. Someone must suffer the loss, and as between plaintiff insurer and defendant hospital, the party making the mistake should bear that loss."[4]

*Id.* at 495–96.

Both *Lincoln National Life* and *National Benefit Administrators* follow *Good Samaritan Hospital* in their analysis and result. In *Lincoln National Life* the Texas Court of Appeals determined, based on the innocent third party creditor exception, that a hospital was not required to refund payments made by an insurer under a mistake of fact. *Lincoln National Life*, 757 S.W.2d at 414. The court observed that the hospital made no misrepresentations, had no notice of the insurer's mistake, extended services based on an assignment of benefits by the insured, and was not unjustly enriched. *Id.* Moreover, the court concluded that "Lincoln alone made the mistake of paying beyond its responsibility" and that "in the normal course of such business, the hospital has no responsibility to determine if an insurance carrier is properly tending to its business." *Id.* Thus, this is "simply an equitable limitation that places the loss, as between two innocent parties, on the one who has created the situation and who was in the best position to have avoided it." *Id.* at 415.

In *Lincoln National Life* the Texas court adopted the *Good Samaritan Hospital* bona fide purchaser analogy and further explained the rationale for the innocent third party creditor exception, stating that the hospital "innocently paid value (medical services) for title to the money it received and is, thereby, under no duty to restore it to the insurer." *Id.; see also Restatement of Restitution* § 13(a) comment a. The court further stated that, "[B]eing in the position of a bona fide purchaser for value, appellee [hospital] was not required to show a change in position in reliance on the overpayment." *Id.*

St. Mary's also cites *National Benefit Administrators*, a 1990 Mississippi federal district court decision, in support of its contention that we should follow the innocent third party creditor exception. The Mississippi federal court, in applying state law, relied primarily on *Good Samaritan Hospital* and *Lincoln National Life* in approving this "widely-recognized exception" in essentially the same circumstances addressed in each of those cases. *National Benefit Administrators*, 748 F.Supp. at 465. The court determined there was no basis to order restitution from the hospital because the element of unjust enrichment was absent. *Id.* Further, the court observed that it was the purported insured, not the hospital, who misrepresented the facts to the insurer, and the hospital had no

---

**3.** The principle has also been stated by Williston as follows:

"Where A, under a mistaken belief in his liability to B, on direction of the latter pays C a claim which C has against B, A cannot recover the payment from C. If the payment was voluntarily and intentionally paid by A to C to satisfy the latter's claim against B, and C had a genuine claim against B, it seems clear that no recovery should be allowed. C is a purchaser of the money for value and in good faith."

13 S. Williston, *A Treatise on the Law of Contracts* § 1574 (3d ed. 1970).

**4.** While the court in *Good Samaritan Hospital* discussed the issue of the hospital's liability to the insurer, it was not presented with and did not reach the question of the insurer's right to recover its mistaken payment from the insured.

reason to know of the misrepresentation. *Id.* The court held that, "as between two innocent parties [the hospital and insurer], ... the one who created the situation and was in the best position to have avoided it ... must bear the loss." *Id.* at 465–66 (citing *Lincoln National Life*, 757 S.W.2d at 415). Thus, relying upon the rationale of these three cases, St. Mary's asserts that it is an innocent third party creditor of Munford and urges us to adopt this exception to the general rule of restitution in Indiana.

## Farm Bureau's Contentions Under Indiana Law

Farm Bureau asserts that the Indiana law of restitution requires that St. Mary's refund the mistaken payment. Citing *DiSilvestro* and *Best v. Best* (1984), Ind.App., 470 N.E.2d 84, Farm Bureau argues it is entitled to recover the money it paid to St. Mary's because (1) the money was paid under a mistake of fact, (2) it would not otherwise have been paid, and (3) the payor was under no legal obligation to pay. Farm Bureau contends that neither the *DiSilvestro* court nor the *Best* court relied upon or specifically required a finding of unjust enrichment. In the alternative, Farm Bureau argues that even if unjust enrichment is a prerequisite for restitution, St. Mary's was unjustly enriched with respect to Farm Bureau because it received payment from one who had no duty to pay for an account St. Mary's would have otherwise had to collect from Munford. Farm Bureau also contends that only restitution can return the parties to the status quo.

In both *DiSilvestro* and *Best,* money was paid by mistake, and we held that restitution was appropriate. St. Mary's contends that *DiSilvestro* and *Best* can be distinguished on their facts, including the critical fact that the payee in those cases was unjustly enriched. In *DiSilvestro,* a broker advanced money to a seller from the sale of stock under a mistake of fact concerning the identity of the stock and the market price, and the mistake resulted from the broker's own error. *DiSilvestro,* 529 N.E.2d at 380. The seller refused to return the payment to the broker and also

retained the stock certificates. *Id.* at 381. We held that the broker was entitled to restitution from the payee. *Id.* at 385. Similarly, in *Best* we affirmed a judgment granting restitution to a husband who made overpayments to his wife under an erroneous modified support order. *Best,* 470 N.E.2d at 88. The modified support order was vacated due to misrepresentations by the wife regarding their daughter's college tuition expenses. *Id.* at 86.

We conclude that Farm Bureau's reliance on *DiSilvestro* and *Best* is misplaced in that both decisions included an implicit determination that the payee was unjustly enriched. In *DiSilvestro,* we stated that, "[I]n essence, DiSilvestro retained ownership of the stock certificates and had possession of the proceeds from the erroneous sale. Accordingly, MFC [the payor] was entitled to recover the proceeds paid to DiSilvestro...." *DiSilvestro,* 529 N.E.2d at 384. Likewise, in *Best* we relied on Section 20 of the Restatement of Restitution to find that the wife was obligated to repay an overpayment of support. As we noted earlier, the Restatement addresses unjust enrichment in Section 1 as an "underlying principle" and typically regards it as a prerequisite to restitution. *See* footnote 1, *supra.* Therefore, we agree with St. Mary's and conclude that our previous decisions have required unjust enrichment prior to granting restitution. *See Ticor Title Ins. Co. v. Graham* (1991), Ind.App., 576 N.E.2d 1332, 1336–37, *trans. denied.*

In support of its alternative argument that St. Mary's was unjustly enriched, Farm Bureau cites *Blue Cross of Central New York, Inc. v. Wheeler* (1983), 461 N.Y.S.2d 624, 93 App.Div.2d 995. The *Wheeler* case states that, "[A] person may be unjustly enriched not only where he receives money or property, but also where he otherwise receives a benefit. He receives a benefit where his debt is satisfied or where he is saved expense or loss." *Id.* 461 N.Y.S.2d at 626. However, the *Wheeler* court was discussing the unjust enrichment of the patient who received medical treatment, not the hospital that was paid by the insurer due to a mistake. Thus,

*Wheeler* actually supports St. Mary's assertion that Munford was unjustly enriched and that it is she, rather than St. Mary's, who has a duty to refund the mistaken payment.

Farm Bureau maintains that under Indiana law a payor can recover the mistaken payment only from the payee, "not from one who is unjustly enriched by the mistaken payment." Appellee's Brief at 18. Farm Bureau further states that "[T]he rule proposed by St. Mary's would result in unjust enrichment to Munford and a loss to Farm Bureau, and subsequent payors who make a payment under mistake of fact." *Id.* It is the general rule that "restitution principles require that suit be brought ordinarily against the party receiving the payment." *Prudential Ins. Co. of America v. Couch* (W.Va.1988), 376 S.E.2d 104, 109. However, in *Couch* the West Virginia Supreme Court followed the *Wheeler* corollary that "a suit for restitution may not be maintained against a party who is not the payee, *unless it is shown that such party was unjustly enriched because the payment satisfied an obligation that was the responsibility of such party.*" *Id.* (emphasis added). The facts in this case fall squarely within that corollary to the general rule.

Thus, contrary to its assertion, we believe that on the facts before us, Farm Bureau can maintain an action for restitution against Munford. Farm Bureau's payment to St. Mary's satisfied an obligation that was Munford's responsibility, and she has been unjustly enriched.

### Application of the Innocent Third Party Creditor Exception

■ The equitable principles of restitution make a distinction between insurance payments made to the insured under mistake of fact, which entitle the insurer to restitution absent a change of position on the part of the insured, and those payments made under mistake of fact to an innocent third party creditor of the insured. *See Good Samaritan Hospital*, 214 N.W.2d at 494; *Lincoln National Life*, 757 S.W.2d at 414 and *National Benefit Administrators*, 748 F.Supp. at 465. There is no unjust enrichment in the latter situation because the payee provided valuable services and was paid without knowledge of any misrepresentation or mistake. *Id.* As stated in *Couch*, "the parties who received the money have performed services, and it is not disputed that they are *entitled to payment from some source for rendering such services.*" *Couch*, 376 S.E.2d at 108 (emphasis added). However, where the insured is overpaid, paid mistakenly or benefits from a mistaken payment for services by the insurer, unjust enrichment results. In such cases, the insured has derived a benefit because it has received more than that to which it was entitled, either in actual payment or from the benefit of having a debt discharged erroneously. *See id.* at 108–09; *Wheeler*, 461 N.Y.S.2d at 626. That is not the case with an innocent third party creditor.

Thus, the general rule provides that an insurer may obtain restitution from a payee who has provided health care benefits where the insurer's payment is made upon a mistake of fact, *see Couch*, 376 S.E.2d at 108, but the rule is "subject to a number of limitations," including the innocent third party creditor exception. *Id.* at n. 6. Farm Bureau contends that if we adopt this exception it will result in disparate treatment of insurance companies, place insurers under a substantial burden and exclude them from the protection of the doctrine of restitution. Farm Bureau also asserts that requiring the hospital to make restitution would not place an undue burden upon it.

We agree with St. Mary's that requiring an innocent provider to refund an insurer's payment made by mistake would place an undue burden of contingent liability upon the provider, "lasting until all such claims were barred by the statutes of limitation." *See Good Samaritan Hospital*, 214 N.W.2d at 495. The assignment of policy benefits to medical providers is a widespread and accepted practice in the health insurance industry, and the prospect of universal refund liability under these circumstances would create uncertainty in accounting for such payments. *Id.* Further, the adoption of this exception places no additional burden upon insurance compa-

nies. It merely requires that an insurer verify coverage before paying a claim, which is what an insurer must do in every case. If a mistake is made, as occurred here, then an insurer can maintain an action for restitution against the insured who was unjustly enriched by payment for medical services.

Finally, St. Mary's correctly observes that this exception to the general rule of restitution would apply to any innocent third party who receives payment of a debt due to a mistaken fact and has exchanged value for the right to receive the payment. As Justice Holmes wrote, "[T]he standards of the law are standards of general application." Oliver Wendell Holmes, Jr., *The Common Law* 108 (1881). We adopt the innocent third party creditor exception not only for insurance companies and medical providers but as a general rule which may apply to all persons similarly situated.

### CONCLUSION

We hereby adopt the innocent third party creditor exception to the general rule re-quiring restitution of a payment made under mistake of fact. St. Mary's is an innocent third party creditor of Munford, as it was not unjustly enriched by Farm Bureau's mistake, had no notice of the mistake, and did not induce the mistake through misrepresentation. We also hold that Farm Bureau can maintain an action for restitution against Munford, who was unjustly enriched. We reverse the judgment and remand to the trial court with instructions to enter judgment for St. Mary's.

Reversed with instructions.

ROBERTSON and BAKER, JJ., concur.