[No. B076533. Second Dist., Div. Four. June 20, 1994.]

STRESS CARE, INC., et al., Petitioners, v.
WORKERS' COMPENSATION APPEALS BOARD, NELSON DYEING
AND FINISHING et al., Respondents.

## COUNSEL

Michael Goch and Gail Sanes for Petitioners.

Thomas McBirnie for Respondents.

## OPINION

**EPSTEIN, Acting P. J.**—The workers' compensation judge (WCJ) found that petitioners, T. Gilbert Moradi, Ph.D., and Stress Care, Inc., knowingly

violated Labor Code section 4628 when they submitted Dr. Moradi's psychological report regarding Martin Macias in Mr. Macias's workers' compensation proceeding, despite their knowledge that Dr. Moradi had not examined Mr. Macias. Based on that finding, the WCJ ordered Dr. Moradi and Stress Care to pay a $1,000 civil penalty to respondent Workers' Compensation Appeals Board (Board) and recommended that the Board institute contempt proceedings against Dr. Moradi and Stress Care. The Board denied reconsideration, and we issued a writ of review.

We conclude that, because Dr. Moradi and Stress Care are not physicians, the WCJ erred in finding that they violated Labor Code section 4628. We therefore annul the order denying reconsideration and remand the matter to the Board.

FACTS

About January 17, 1991, Mr. Macias filed a claim form alleging that during his employment by respondent Nelson Dyeing and Finishing he sustained a cumulative industrial injury that included a psychological injury. On February 17, 1991, Dr. Moradi signed an initial comprehensive psychological report regarding Mr. Macias. The report was prepared on the letterhead of Stress Care, Inc., a corporation solely owned by Dr. Moradi. In the report, Dr. Moradi stated that Mr. Macias had an adjustment disorder that arose out of and occurred in the course of his employment, that he was temporarily totally disabled, and that he needed psychotherapy. Dr. Moradi is a licensed marriage, family, and child counselor (MFCC).

In the report, Dr. Moradi stated that he did not see Mr. Macias. Dr. Moradi stated that he reviewed an outline of a history taken by Donald Collins, whose qualifications were not disclosed in the report, and that Dr. Moradi drafted the findings and conclusions of the report. He stated that he provided that information pursuant to a Board rule and Labor Code section 4628. A clinical psychologist at Stress Care later prepared a report regarding psychological tests given to Mr. Macias. Both reports were submitted in Mr. Macias's workers' compensation proceeding, and Stress Care filed a lien claim in the amount of $4,830.

In May and June 1992, Mr. Macias, the employer, and the workers' compensation insurers, Highlands Insurance Company (Highlands) and Pacific Rim Assurance Company (Pacific Rim), entered into compromise and release agreements. In an addendum to its compromise and release, Highlands asserted that it provided about one day of coverage during the alleged cumulative injury period and that it believed all lien claims were the

responsibility of Pacific Rim. Highlands listed Stress Care's lien claim as one of the liens of record.[1] In its compromise and release, Pacific Rim agreed to adjust or litigate the lien claims.

On August 25, 1992, the WCJ sent a letter to counsel for Mr. Macias, the employer, and the insurers, with copies to Dr. Moradi and Stress Care. In that letter, the WCJ stated that she was concerned about Dr. Moradi's February 17, 1991, report because Dr. Moradi stated in that report that he did not see Mr. Macias and that he based his conclusions entirely on a review of a history taken by another individual. She notified Dr. Moradi and Stress Care that she was setting the matter for a hearing on a potential violation of Labor Code sections 4628 and 3209.3 and that a knowing violation of Labor Code section 4628 gives rise to a civil penalty of up to $1,000 and a possible finding of contempt.

On September 10, 1992, Dr. Moradi sent a letter to the WCJ, stating that, when he prepared the February 17, 1991, report, he was not aware of the requirements of Labor Code section 4628 and he did not intend to violate that section. He further stated that he was withdrawing Stress Care's lien claim.

At the hearing before the WCJ, Dr. Moradi testified that, when he wrote the February 17, 1991, report, he was not familiar with Labor Code section 4628. He had some knowledge about that section from talking to colleagues, who informed him that in a report he needed to disclose who did what and mention Labor Code section 4628. He did not know that it was necessary to see the worker. He had never read Labor Code section 4628.

Dr. Moradi is not a licensed clinical psychologist. He has a doctorate in clinical psychology, but his only license in the field of psychotherapy is as an MFCC.

Dr. Moradi stated that, when he wrote the report, he did not intend to mislead anyone. He stated his diagnosis was only hypothetical because he did not see Mr. Macias. However, in the report, Dr. Moradi had not stated that his opinion was hypothetical.

The WCJ found that Dr. Moradi and Stress Care knowingly violated Labor Code section 4628. She ordered Dr. Moradi and Stress Care to pay the Board $1,000 as a civil penalty and recommended that the Board institute

[1] In a letter to the WCJ, counsel for Highlands later asserted that Highlands provided at most eight days of coverage during the alleged cumulative injury period. Counsel for Highlands further stated that Highlands had objected to all the lien claims.

contempt proceedings against Dr. Moradi and Stress Care on the basis that they violated Labor Code sections 4628 and 3209.8.

In the opinion on decision, the WCJ noted that Dr. Moradi is not a physician as defined in Labor Code section 3209.3. She concluded that this is a "legal technicality" that may not be invoked to relieve Dr. Moradi from the consequences of his conduct. She stated that an unlicensed driver is not shielded from liability for negligence because the driver lacks a license.

Dr. Moradi and Stress Care petitioned for reconsideration. In her report on the petition for reconsideration, the WCJ stated that she did not believe Dr. Moradi's testimony that he never read Labor Code section 4628. In view of his statement that his diagnosis was merely hypothetical, she did not believe that he thought he did not have to see Mr. Macias. She noted that there was nothing hypothetical about Stress Care's bill.

The WCJ identified two bases for personal jurisdiction over Dr. Moradi and Stress Care: as a result of their filing the lien claim and by their general appearance at the hearing before the WCJ. The WCJ concluded that Dr. Moradi and Stress Care should be deemed physicians within the meaning of Labor Code section 4628 because they produced reports to prove workers' compensation claims. In support of that conclusion, she stated: "[T]here is no legal [principle] that allows one to escape the legal consequences of one's actions merely by engaging in an activity that requires [a] license and then neglecting to obtain that license. Does the poacher avoid liability by not obtaining a hunting license? Is an unlicensed driver excused from otherwise observing the Vehicle Code?"

The Board adopted the WCJ's report and denied reconsideration. The Board concluded that, in view of Dr. Moradi's statement in his report that his disclosures regarding the evaluation of Mr. Macias and the preparation of the report were provided pursuant to Labor Code section 4628, Dr. Moradi had knowledge of Labor Code section 4628. The Board further stated that it gave great weight to the WCJ's credibility determination.

## DISCUSSION

In 1991, Labor Code section 4628 provided in pertinent part as follows: "(a) Except as provided in subdivision (c), no person, other than the physician who signs the medical-legal report, except a nurse performing those functions routinely performed by a nurse, such as taking blood pressure, shall examine the injured employee or participate in the nonclerical preparation of the report, including all of the following: [¶] (1) Taking a complete

history. [¶] (2) Reviewing and summarizing prior medical records. [¶] (3) Composing and drafting the conclusions of the report. [¶] (b) The report shall disclose the name and qualifications of any person who administers diagnostic studies. [¶] (c) If the initial outline of a patient's history or excerpting of prior medical records is not done by the physician, the physician shall review the excerpts and the entire outline and shall make additional inquiries and examinations as are necessary and appropriate to identify and determine the relevant medical issues. . . . [¶] (e) Failure to comply with the requirements of this section shall make the report inadmissible as evidence and shall eliminate any liability for payment of any medical-legal expense incurred in connection with the report. [¶] (f) Knowing failure to comply with the requirements of this section shall subject the physician to a civil penalty of up to one thousand ($1,000) for each violation to be assessed by a workers' compensation judge or the appeals board. [¶] (g) A physician who is assessed a civil penalty under this section may be terminated, suspended, or placed on probation as a qualified medical evaluator pursuant to subdivisions (k) and (*l*) of Section 139.2. [¶] (h) Knowing failure to comply with the requirements of this section shall subject the physician to contempt pursuant to the judicial powers vested in the appeals board." (Stats. 1990, ch. 1550, § 34.)[2]

---

[2]Labor Code section 4628 currently provides: "(a) Except as provided in subdivision (c), no person, other than the physician who signs the medical-legal report, except a nurse performing those functions routinely performed by a nurse, such as taking blood pressure, shall examine the injured employee or participate in the nonclerical preparation of the report, including all of the following: [¶] (1) Taking a complete history. [¶] (2) Reviewing and summarizing prior medical records. [¶] (3) Composing and drafting the conclusions of the report.[¶] (b) The report shall disclose the date when and location where the evaluation was performed; that the physician or physicians signing the report actually performed the evaluation; whether the evaluation performed and the time spent performing the evaluation [were] in compliance with the guidelines established by the Industrial Medical Council or the administrative director pursuant to paragraph (5) of subdivision (j) of Section 139.2 or Section 5307.6 and shall disclose the name and qualifications of each person who performed any services in connection with the report, including diagnostic studies, other than its clerical preparation. If the report discloses that the evaluation performed or the time spent performing such evaluation was not in compliance with the guidelines established by the Industrial Medical Council or the administrative director, the report shall explain, in detail, any variance and the reason or reasons therefor. [¶] (c) If the initial outline of a patient's history or excerpting of prior medical records is not done by the physician, the physician shall review the excerpts and the entire outline and shall make additional inquiries and examinations as are necessary and appropriate to identify and determine the relevant medical issues. [¶] (d) No amount may be charged in excess of the direct charges for the physician's professional services and the reasonable costs of laboratory examinations, diagnostic studies, and other medical tests, and reasonable costs of clerical expense necessary to producing the report. Direct charges for the physician's professional services shall include reasonable overhead expense. [¶] (e) Failure to comply with the requirements of this section shall make the report inadmissible as evidence and shall eliminate any liability for payment of any medical-legal

When Dr. Moradi's report was written, Labor Code section 3209.3 provided in pertinent part: "(a) 'Physician' includes physicians and surgeons holding an M.D. or D.O. degree, psychologists, acupuncturists, optometrists, dentists, podiatrists, and chiropractic practitioners licensed by California state law and within the scope of their practice as defined by California state law. [¶] (b) 'Psychologist' means a licensed psychologist with a doctorate degree in psychology and who either has at least two years of clinical experience in a recognized health setting, or has met the standards of the National Register of the Health Service Providers in Psychology. . . ." (Stats. 1988, ch. 1496, § 1, pp. 5304-5305.)

The word "includes" is ordinarily a term of enlargement rather than limitation. (*Ornelas* v. *Randolph* (1993) 4 Cal.4th 1095, 1101 [17 Cal.Rptr.2d 594, 847 P.2d 560].) However, the language of Labor Code section 3209.8 restricts the definition of "physician" in Labor Code section 3209.3 by indicating that the term does not include MFCC's. When Dr. Moradi's report was written, Labor Code section 3209.8 provided: "Treatment reasonably required to cure or relieve from the effects of an injury shall include the services of marriage, family, and child counselors and clinical social workers licensed by California state law and within the scope of their practice as defined by California state law if the injured person is referred to the marriage, family, and child counselor or the clinical social worker by a licensed physician and surgeon, with the approval of the employer, for treatment of a condition arising out of the injury. *Nothing in this section shall*

---

expense incurred in connection with the report. [¶] (f) Knowing failure to comply with the requirements of this section shall subject the physician to a civil penalty of up to one thousand dollars ($1,000) for each violation to be assessed by a workers' compensation judge or the appeals board. [¶] (g) A physician who is assessed a civil penalty under this section may be terminated, suspended, or placed on probation as a qualified medical evaluator pursuant to subdivisions (k) and (*l*) of Section 139.2. [¶] (h) Knowing failure to comply with the requirements of this section shall subject the physician to contempt pursuant to the judicial powers vested in the appeals board. [¶] (i) Any person billing for medical-legal evaluations, diagnostic procedures, or diagnostic services performed by persons other than those employed by the reporting physician or physicians, or a medical corporation owned by the reporting physician or physicians shall specify the amount paid or to be paid to those persons for the evaluations, procedures, or services. This subdivision shall not apply to any procedure or service defined or valued pursuant to Section 5307.1. [¶] (j) The report shall contain a declaration by the physician signing the report, under penalty of perjury, stating: [¶] 'I declare under penalty of perjury that the information contained in this report and its attachments, if any, is true and correct to the best of my knowledge and belief, except as to information that I have indicated I received from others. As to that information, I declare under penalty of perjury that the information accurately describes the information provided to me and, except as noted herein, that I believe it to be true.' [¶] The foregoing declaration shall be dated and signed by the reporting physician and shall indicate the county wherein it was signed. [¶] (k) The physician shall provide a curriculum vitae upon request by a party and include a statement concerning the percent of the physician's total practice time that is annually devoted to medical treatment."

*be construed to authorize marriage, family, and child counselors* or clinical social workers *to determine disability* for the purposes of Article 3 (commencing with Section 4650) of Chapter 2 of Part 2." (Stats. 1985, ch. 1156, § 2, p. 3899, italics added.)

■ Dr. Moradi and Stress Care contend that, because Dr. Moradi and Stress Care are not physicians, they did not violate subdivision (a) or (c) of Labor Code section 4628, and that the WCJ erred in imposing a civil penalty under Labor Code section 4628, subdivision (f). In light of the plain language of the statute and its legislative history, we must agree.

"The rules governing statutory construction are well settled. We begin with the fundamental premise that the objective of statutory interpretation is to ascertain and effectuate legislative intent. [Citations.] 'In determining intent, we look first to the language of the statute, giving effect to its "plain meaning." ' [Citations.] Although we may properly rely on extrinsic aids, we should first turn to the words of the statute to determine the intent of the Legislature. [Citation.] Where the words of the statute are clear, we may not add to or alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history. [Citation.]" (*Burden* v. *Snowden* (1992) 2 Cal.4th 556, 562 [7 Cal.Rptr.2d 531, 828 P.2d 672].)

Labor Code section 4628 was enacted in 1989 by passage and approval of Assembly Bill No. 276 (1989-1990 Reg. Sess.). The conference report on Assembly Bill No. 276 by the Office of Senate Floor Analyses described Labor Code section 4628 in pertinent part as follows: "*Ghostwriting Medical-Legal Reports* The bill would generally prohibit any person other than the *physician* who signs the report from examining the employee or participating in the nonclerical preparation of the report. . . . [¶] Failure to comply with these requirements would make the report inadmissible as evidence and eliminate any liability to pay for the report. A knowing failure to comply would subject the *physician* to a civil penalty of $1000 per violation." (At p. 18, second and third italics added.)

A summary of Assembly Bill No. 276 (1989-1990 Reg. Sess.) by the Senate Committee on Industrial Relations stated: "*Medical Evaluation Quality Control*—Several provisions are included to ensure the quality of medical evaluations: . . . [¶] *Ghostwriting*—Anyone other than the doctor signing the report will be prohibited from conducting the examination or participating in the medical aspects of preparing evaluation reports. Violations will carry a civil penalty of up to $1,000, make the report inadmissible,

eliminate liability to pay for the report, and subject the *physician* to contempt proceedings." (At p. 11, final italics added.)

Dr. Moradi is not a "physician" within the meaning of Labor Code sections 3209.3 and 3209.8. He is, instead, an MFCC. Stress Care, Inc., which is owned by Dr. Moradi, also is not a "physician." Because the penalty provisions of Labor Code section 4628 apply only to physicians, the WCJ erred in ordering Dr. Moradi and Stress Care to pay a civil penalty for knowingly violating Labor Code section 4628. The WCJ's analogy to punishment of poachers and unlicensed drivers is unpersuasive. Vehicle Code provisions containing language regarding how a vehicle should be driven refer to any person driving or operating the vehicle, and Fish and Game Code section 2582 imposes liability on "any person" who poaches. Labor Code section 4628, subdivision (f), in contrast, provides that a civil penalty shall be imposed on any "physician" who knowingly fails to comply with Labor Code section 4628. Nothing on the face of Labor Code section 4628 or its legislative history indicates that subdivision (a), (c), or (f) was intended to apply to persons who are not physicians within the meaning of Labor Code sections 3209.3 and 3209.8 or to corporations that are solely owned by persons who are not physicians within the meaning of sections 3209.3 and 3209.8.

Dr. Moradi and Stress Care raise various other contentions challenging the WCJ's finding that they knowingly violated Labor Code section 4628 and ordering them to pay a civil penalty. In view of our conclusion that Labor Code section 4628, subdivisions (a), (c), and (f) do not apply to persons who are not physicians within the meaning of Labor Code sections 3209.3 and 3209.8 or to corporations that are solely owned by persons who are not physicians within the meaning of those sections, we need not discuss those contentions. Dr. Moradi and Stress Care argue that the contempt provisions of Labor Code section 4628 are unconstitutional insofar as they would authorize the WCJ to initiate proceedings for indirect contempt as a punitive measure. In fact, no contempt proceedings have been initiated against Dr. Moradi or Stress Care. Consequently, we need not and do not decide the contempt issues addressed in petitioners' argument.

### DISPOSITION

Respondent Workers' Compensation Appeals Board's May 18, 1993, order denying reconsideration is annulled, and the matter is remanded to respondent Workers' Compensation Appeals Board with directions to grant reconsideration, to annul the finding that petitioners, T. Gilbert Moradi, Ph.D., and Stress Care, Inc., knowingly violated Labor Code section 4628,

and to annul the order that Dr. Moradi and Stress Care, Inc., pay the Workers' Compensation Appeals Board a civil penalty.

Vogel (C. S.), J., and Hastings, J., concurred.