[No. B081157. Second Dist., Div. Seven. July 21, 1995.]

AMERICAN PSYCHOMETRIC CONSULTANTS, INC., Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD, CHEESECAKE
FACTORY et al., Respondents.

[No. B081241. Second Dist., Div. Seven. July 21, 1995.]

APEX MEDICAL GROUP, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD, PARKER
PAINTING et al., Respondents.

[No. B083331. Second Dist., Div. Seven. July 21, 1995.]

PACE MEDICAL GROUP, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD, CIRCLE
DELIVERS, INC., et al., Respondents.

1628

## Counsel

Jones, Day, Reavis & Pogue, Martha P. Hoffman, Cary David Abramowitz, Leland L. Whitney, Fred L. Fong, Elwood Lui, Christine A. Samsel, Valensi, Rose & Magaram and Kenneth L. Heisz for Petitioners.

Cadwalader, Wickersham & Taft, Carlyle R. Brakensiek, Mark Freifeld, Catherine I. Hanson, Susan L. Ballard, John E. McDermott and John C. Kirkland as Amici Curiae on behalf of Petitioners.

Jack H. Davidson, Krimen, Klein, Da Silva, Daneri & Bloom, Louis Harris, Nouskajian & Cranert, James W. Ewert, Diane B. Link, Horvitz & Levy and Christina J. Imre for Respondents.

Finnegan, Marks & Hampton, Michael A. Marks and Bennett M. Lieber as Amici Curiae on behalf of Respondents.

## Opinion

**LILLIE, P. J.**—In each of the three workers' compensation cases before the court, the workers' compensation judge (WCJ) granted a request by an employer/carrier for restitution of medical-legal fees paid by the employer/carrier more than two years earlier to a medical lien claimant. In each case

the Workers' Compensation Appeals Board (Board) upheld the restitution order. We annul the orders.

After the several petitions for review of these orders were filed in this court, we asked the Board to specify the statutory or other authority upon which it relied in approving restitution in one of the cases, American Psychometric Consultants, Inc. v. Workers' Compensation Appeals Board (Hurtado), No. B081157 (APC). On September 1, 1994, the Board responded in detail concerning its statutory and other authority but also advised the court that it had somewhat changed its position on the restitution issue and wished us to remand the APC matter for further Board consideration.

Despite the Board's change of position, the petitioner in APC and amici curiae California Society of Industrial Medicine and Surgery, FWHC Medical Group, Inc., and Veritas Medical Group, strongly urged the court to issue a writ of review and consider the restitution issue because of its importance in the post-reform workers' compensation community. Since the court had been presented with several petitions by different medical lien claimants contending that the restitution orders were improper, we decided to consolidate the cases involved as a matter of judicial economy and issue one opinion on the restitution issue. Pending oral argument, we also granted requests by the California Self-Insurers' Association, the California Workers' Compensation Institute, and the California Medical Association to discuss the issues involved in these matters as amici curiae.

## FACTUAL AND PROCEDURAL HISTORY

*APC (Hurtado)*

Applicant Antonio Hurtado, born June 4, 1958, was employed as a busboy by defendant Cheesecake Factory, insured by defendant Republic Indemnity Insurance Company. On March 19, 1991, applicant filed two industrial claims, alleging a specific injury to his low back from a slip and fall in the Cheesecake Factory kitchen on March 16, 1991, and further alleged continuous "psychiatric, internal and musculoskeletal" trauma due to stress during the course of his employment with the same employer from December 1, 1990, to March 18, 1991.

Three days after he filed the claims, on March 22, 1991, applicant Hurtado sought psychological examination and evaluation for medical-legal purposes

at a clinic of APC, the present medical lien claimant.[1] On April 10, 1991, an initial medical-legal "psychological assessment" report issued, signed by clinical psychologist Barbara Kalb, Ph.D., stating that she had been assisted in her evaluation of applicant Hurtado by psychological assistant David Leonelli, Ph.D. (The Kalb-Leonelli report is not in the Board record. It was provided by defendants as exhibit A in their reply filed September 14, 1994, to the brief submitted by the Board on September 1, 1994.)

According to the report, applicant was interviewed at APC with the assistance of a Spanish-speaking interpreter. The report indicated applicant felt under pressure on the job, related he was frequently insulted and experienced discrimination because he was Mexican, and declared "[The employer] would treat us like animals." He also admitted to having suicidal thoughts. The report set forth in some detail the results of psychological testing of applicant. He was diagnosed as having experienced "Major Depression, Single Episode, Unspecified." Further psychiatric care was recommended.

APC billed defendant carrier $3,261.92 for medical-legal services incurred by applicant. Defendant Republic did not contest the bill as unreasonable or unnecessary within the 60-day period permitted in Labor Code section 4622. Instead, after review by Consolidated Medical Care, Inc., which analyzed the billing in depth and recommended the appropriate payment, defendant Republic paid APC $2,426.88 on May 17, 1991, which APC accepted as payment in full.

On April 20, 1992, defendants took applicant's deposition.[2]

On October 29, 1992, some 17 months after defendants had paid APC, defendants sought restitution/reimbursement of payment, claiming that it had

---

[1]Medical-legal expenses in workers' compensation proceedings are litigation expenses authorized in the Labor Code. Labor Code section 4620, based on Labor Code former section 4601.5, was enacted in 1984 (Stats. 1984, ch. 596, § 4, p. 228, eff. July 19, 1984) and amended in 1985 (Stats. 1985, ch. 428, § 1, p. 1692, eff. July 30, 1985). At all pertinent times in 1991, Labor Code section 4620 defined "medical-legal" expenses as "any costs and expenses incurred by or on behalf of any party, the administrative director, the board, or a referee for X-rays, laboratory fees, other diagnostic tests, medical reports, medical records, medical testimony, and, as needed, interpreter's fees, for the purpose of proving or disproving a contested claim."

When such expenses are incurred by an applicant, their purpose is to assist him or her in proving an industrial claim. Such expenses are generally payable by the employer/carrier, whether the claim is proved or not, although the Board has ruled where the employee has given a false medical history to examining physicians, the employee is not entitled to reimbursement for the cost of medical reports or depositions. (*Penny* v. *Workers' Comp. Appeals Bd.* (1983) 48 Cal.Comp.Cases 468.)

[2]While there have been references in this litigation to the Hurtado deposition, it is not contained in the Board record, nor have we been given the opportunity to review it. The

paid APC pursuant to a "mistake of fact," that the sums paid had not been due APC because (1) the services had been rendered by APC only 3 days after applicant had filed his claim so that it was not a "contested claim" within the meaning of Labor Code section 4620, and (2) Drs. Kalb and Leonelli had not complied with Labor Code section 4628, subdivisions (a) and (e).[3]

APC did not appear at the August 6, 1993, hearing where the matter was submitted. On September 17, 1993, the WCJ issued a joint order of restitution, finding that defendant Republic had paid APC $2,426.88 "under a mistake of fact. Applicant denies ever seeing Dr. Kalb of Lien Claimant." The WCJ ordered reimbursement "plus legal rate of interest from date of receipt of payment."

minutes of hearing on August 6, 1993, indicate defendants were to file the Hurtado deposition with the WCJ, and in his joint order of restitution, the WCJ declared he had read the deposition. According to defendants' petition for restitution, "Mr. Hurtado stated he could not remember having been evaluated by Ph.D. Barbara Kalb nor any female doctor located on Myrtle Avenue in Long Beach, which is apparently the address for American Psychometric Consultants." Defendants subsequently filed "Summary of defendant's contentions" in which it was charged that at deposition applicant had denied he had told any doctor he was suicidal or had been treated like an animal.

[3]In 1991, Labor Code section 4628 provided in pertinent part as follows: "(a) Except as provided in subdivision (c), no person, other than the physician who signs the medical-legal report, except a nurse performing those functions routinely performed by a nurse, such as taking blood pressure, shall examine the injured employee or participate in the nonclerical preparation of the report, including all of the following: [¶] (1) Taking a complete history. [¶] (2) Reviewing and summarizing prior medical records. [¶] (3) Composing and drafting the conclusions of the report.

"(b) The report shall disclose the name and qualifications of any person who administers diagnostic studies.

"(c) If the initial outline of a patient's history or excerpting of prior medical records is not done by the physician, the physician shall review the excerpts and the entire outline and shall make additional inquiries and examinations as are necessary and appropriate to identify and determine the relevant medical issues.

". . . . . . . . . . . . . . . . . . . . . . . .

"(e) Failure to comply with the requirements of this section shall make the report inadmissible as evidence and shall eliminate any liability for payment of any medical-legal expense incurred in connection with the report."

We note that Dr. Kalb is a "physician" to whom Labor Code section 4628 applies, since she is a clinical psychologist within the meaning of Labor Code section 3209.3, subdivisions (a) and (b), with the requisite doctoral degree. (See Stress Care, Inc. v. Workers' Comp. Appeals Bd. (1994) 26 Cal.App.4th 909, 917 [32 Cal.Rptr.2d 426].) However, no appellate court has yet construed the interworking of subdivisions (a) and (c) of Labor Code section 4628. In the Kalb-Leonelli report, which Dr. Kalb signed, she did not specifically state she had personally examined Hurtado. Dr. Kalb did state that she had been assisted in the psychological evaluation of Antonio Hurtado by Dr. Leonelli, and further stated "I have analyzed the test results and dictated the above report. . . ."

While Labor Code section 4628 provides for various penalties as the consequence of violation thereof, it does not provide for restitution.

APC petitioned for reconsideration, contending that APC had requested payment of the lien in good faith, and had accepted payment from defendant Republic after negotiation (reduction). APC argued the matter was settled and should not now be reopened to permit restitution.[4]

The WCJ recommended denial of reconsideration, on the ground that APC's petition for reconsideration had not been verified. In the event the Board waived verification, the WCJ recommended that "this matter be remanded back to this trial judge with the additional issues of contempt citation against APC and/or Dr. Kalb and imposition of civil penalties for the fraudulent generation of medical evidence." There was no discussion of the basis, statutory or otherwise, upon which he had ordered restitution.[5]

On November 29, 1993, the Board issued its opinion denying reconsideration, noting Dr. Kalb's report conflicted with her admission she had not personally examined applicant Hurtado, and that the report also conflicted with applicant's deposition.[6] APC then sought relief in this court, by timely, verified petition for writ of review, contending anew its transaction with defendants had been conducted in good faith, had resulted in payment by defendants without objection, and further asserted that the equitable principles set forth in *City of Hope*, *supra*, applied herein and precluded restitution.

---

[4]APC relied on a civil case, *City of Hope Nat. Medical Center* v. *Superior Court* (1992) 8 Cal.App.4th 633, 637 [10 Cal.Rptr.2d 465], wherein recovery was denied to an insurer who sought reimbursement of payments it had made to a hospital before the insurer determined that there was no coverage in its policy for the insured patient's treatment there. The court held that "in the absence of fraud, an insurer may not recover from a health care provider payments made under the mistaken belief that the patient's treatment was covered under a policy issued by the insurer to the patient." The opinion emphasized that while "unjust enrichment" permits restitution when a payment is made based on a mistake of fact, it should be denied when the payment is made to a bona fide creditor of a third person—a creditor without fault, who had made no misrepresentations and was not on notice the payment had been made by mistake at the time it was made.

[5]APC has asserted its petition was verified, and has included the verification and proof of service in its petition to this court. Since the Board did not deny reconsideration on the ground the petition for reconsideration was unverified, we assume the Board had ascertained that this requirement for their review had been met.

[6]The Board stated, "We agree with the WCJ that the evidence justifies the order of restitution. Given that petitioner's evaluation took place only three days after the claim form was dated, before defendant employer had an opportunity to investigate the allegations of injury and to determine whether to accept or deny the claim, we are also persuaded that petitioner's evaluation of applicant occurred prior to the existence of a disputed claim. Petitioner is therefore unable to prove that its services were reasonable, actually, and necessarily incurred for purposing of proving a contested claim." There was again no discussion of the statutory or other bases for restitution.

*Apex Medical Group (Gonzalez)*

Applicant Jose Gonzalez, born October 23, 1960, was employed as a painter/blaster by defendant Parker Painting, insured by defendant State Compensation Insurance Fund (SCIF). On July 18, 1990, applicant sustained an injury to his abdomen from sandblasting equipment on the job. Defendants admitted the injury, and applicant was treated by Steven Davis, M.D., and H.A. Najafi, M.D. Applicant underwent surgery on November 20, 1990, and was released by Dr. Najafi to return to work in January 1991. Defendant employer paid temporary disability benefits from August 2, 1990, to December 20, 1990.

Applicant obtained counsel and signed a claim form on December 5, 1990, which was received by defendant employer on December 12, 1990. From December 10, 1990, to April 1991, Apex Medical Group, to whom applicant had been referred by his attorney, evaluated applicant for medical-legal purposes, including neurological evaluation and reevaluation, and billed defendants for these expenses. Defendants did not protest these billings as "unreasonable" or "unnecessary," but paid a total of $2,934 to Apex in June and October 1991. Apex claimed an additional $1,406 was due.

On February 9, 1993, applicant and defendants stipulated to permanent disability of 9.75 percent, a total of $4,095. The agreement of the parties recited the lien of Apex was to be adjusted. Defendants resisted payment of the additional amount Apex claimed due, and petitioned for restitution of the approximately $3,000 which had already been paid. The basis upon which restitution was sought was that at the time Apex rendered the services, there had been no disputed claim, and the services were neither "reasonable" nor "necessary."

Hearing was held on August 20, 1993, and a representative appeared for Apex. Among other things, Apex contended defendants had not complied with Labor Code sections 4622 and 4625, which required protest of billings for medical-legal expenses within 60 days as a prerequisite to reimbursement. Defendants responded the services rendered by Apex were not medical-legal expenses subject to the statutory provisions cited by Apex.[7]

---

[7]At the time the expenses were incurred herein, Labor Code section 4622, enacted in 1984, provided in pertinent part as follows: "All medical-legal expenses for which the employer is liable shall, upon receipt by the employer of all reports and documents required by the

The WCJ issued a finding of fact and order on September 29, 1993, denying Apex's additional lien claim and directing reimbursement of $3,000. He explained there was no contested claim at the time the services were initially rendered, and that the services rendered after the claim form was filed were also noncompensable as "fruit of the tainted tree."[8]

Apex petitioned for reconsideration, again arguing that defendants were not entitled to restitution because they had not complied with Labor Code sections 4622 and 4625, relying on *Otis* v. *City of Los Angeles* (1980) 45 Cal.Comp.Cases 1132, the Board in bank decision which held that these sections governed the payment of medical-legal expenses. The WCJ recommended denial of reconsideration because applicant had sustained an admitted industrial injury accepted by defendant employer without contest. The Board denied reconsideration on December 6, 1993, on the ground that reimbursement was appropriate when there had been "no disputed claim." A timely, verified petition for writ of review followed, reiterating the argument that petitions for restitution of medical-legal expenses are governed by Labor Code sections 4622 and 4625, and that no exception is made for uncontested claims.

---

administrative director incident to the services, be paid to whom the funds and expenses are due, as follows:

"(a) Except as provided in subdivision (b), within 60 days after receipt by the employer of each separate, written billing and report, and where payment is not made within this period, that portion of the billed sum then unreasonably unpaid shall be increased by 10 percent, together with interest thereon at the rate of 7 percent per annum retroactive to the date of receipt of the bill and report by the employer. *Where the employer, within the 60-day period, contests the reasonableness and necessity for incurring the fees, services, and expenses, payment shall be made within 20 days of the filing of an order of the appeals board directing payment.*

"The penalty provided for in this subdivision shall not apply if (1) the employer pays the provider that portion of his or her charges which do not exceed the amount deemed reasonable pursuant to subdivision (c) of Section 4624 within 60 days of receipt of the report and itemized billing, and, (2) the appeals board sustains the employer's position in contesting the reasonableness or necessity for incurring the expenses. *If the employer prevails before the appeals board, the referee shall order the physician to reimburse the employer for the amount of the paid charges found to be unreasonable. . . .*

". . . . . . . . . . . . . . . . . . . . . . . .

"(c) *The employer shall notify, in writing, the provider of the services, the employee, or if represented, his or her attorney, if the employer contests the reasonableness or necessity of incurring these expenses, and shall indicate the reasons therefor. . . .*" (Italics added.)

Labor Code section 4625, also enacted in 1984, then provided that "All charges for initial comprehensive industrial medical-legal reports which are rebuttably presumed reasonable pursuant to subdivision (c) of Section 4624 shall be paid promptly pursuant to Section 4622."

[8]We have not discovered any rule of law or doctrine applicable in workers' compensation matters which encompasses denial of a lien claim on this basis.

*Pace Medical Group (Parong)*

Applicant Arnel Parong, born September 24, 1964, was employed from February 19, 1990, to March 29, 1991, as an assembler by defendant The Circle Delivers, Inc., insured by defendant Ohio Casualty Insurance Company. After termination from his employment, applicant signed a claim form on March 30, 1991, alleging a cumulative industrial injury from March 29, 1990, through March 27, 1991, to his "head, chest, shoulder and back." Applicant further alleged "psyche stress, headaches, harassment, muscuskeletal [*sic*] [problems]." The employer received two claim forms, one on April 1, 1991, and the other on April 11, 1991.

Applicant obtained an initial medical-legal report from internist J. Azari, M.D., of Pace Medical Group, Inc. (Pace) on April 5, 1991. Dr. Azari also issued a permanent and stationary report on July 9, 1991, declaring applicant was precluded from stress or strenuous activities in the workplace. The defense obtained a report from psychiatrist Timothy Law, M.D., who stated applicant had "schizoidtypal personality disorders" and "borderline intellectual functioning."

On October 28, 1992, applicant settled his claim against defendants for $1,000. The compromise and release agreement recited that absenteeism and marijuana use by applicant had negatively impacted his employment. In addendum C of the agreement, the defendants undertook to "adjust, pay or litigate the lien of Pace Medical Group ($12,583.20)."[9] Defendant carrier did not advise Pace the report was inadequate in any respect. After Medata review of the $1,507 bill, it agreed to pay $1,461.80, which Pace accepted and received on May 30, 1991.

On April 5, 1993, the WCJ issued a notice of intention to disallow lien claims, checking various boxes on a form to indicate there had been no contested claim on date of services, the Pace reports contained an inadequate history, no reasons had been given for diagnosis, and the reports and the diagnostic testing done at Pace had no probative value and had not produced relevant evidence. On May 19, 1993, the WCJ issued an order disallowing liens, finding the medical-legal expense had not been "reasonably or necessarily incurred." Pace did not respond.[10]

Meanwhile, defendants were corresponding through its counsel with the WCJ, with service to the parties concerned. These communications, on June

[9]The figure stated, i.e., $12,583.20, was erroneous. Pace billed $4,045 in total, and $1,507 for the initial Azari report.

[10]In this court, Pace has explained that it did not respond because it had decided to forego the unpaid balance of its lien claim.

8, 1993, and July 23, 1993, are in the Board record. In them defendants sought the guidance of the WCJ concerning restitution of the $1,461.80 already paid to Pace. On August 18, 1993, the WCJ wrote a letter to the defendants, suggesting a petition for restitution and explaining what kind of evidence would be required to prove entitlement thereto.

On October 19, 1993, defendants filed their petition, declaring the payment to Pace had been made "by mistake." On October 27, 1993, the WCJ issued notice of intention to issue order directing restitution, citing Pace's failure to comply with Labor Code sections 4620 and 4621. On November 18, 1993, Pace responded to the notice, observing that the WCJ had been advising the defendants on how to proceed in her court. Pace argued that the WCJ had made a final order concerning liens on May 19, 1993, and had no jurisdiction to pursue restitution.

The WCJ issued an order directing restitution on December 14, 1993. In her opinion on decision, she stated that jurisdiction over liens had been reserved in the compromise and release agreement approved by the court, and further, that the Board retained general jurisdiction over such matters.[11]

Pace petitioned for reconsideration, arguing that "Defendant Carrier failed to introduce any evidence showing that payment was made under protest or reservation or subject to a future request for reimbursement." The WCJ recommended denial of reconsideration, reiterating her position that the Board's general jurisdiction permitted restitution orders *at any time in the five years from date of injury,* and stating unequivocally that "[t]here is no

---

[11]The WCJ was referring to Labor Code sections 5803 and 5804. Labor Code section 5803 provides, in pertinent part, for the "continuing jurisdiction" of the Board "over all its orders, decisions, and awards made and entered under the provisions of this division . . . . At any time, upon notice and after an opportunity to be heard is given to the parties in interest, the appeals board may rescind, alter, or amend any order, decision, or award, good cause appearing therefor." Labor Code section 5804 limits the Board's power to rescind, alter or amend awards "after five years from the date of injury . . . ."

The WCJ's reliance on these general empowering statutes to justify unrestricted exercise of power by either a WCJ or the Board to order restitution is misplaced. Neither statute so expressly provides. These statutes also require a showing of "good cause," (the parameters of which may be a question of law, subject to judicial review), before undertaking the rescission or other alterations permitted. (*Azadigian* v. *Workers' Comp. Appeals Bd.* (1992) 7 Cal.App.4th 372, 377-378 [8 Cal.Rptr.2d 643].)

Further, it is an accepted rule of statutory construction that general statutes are subordinate to specific legislation on the same subject. (2B Sutherland, Statutory Construction (5th ed. 1992) § 51.05, p. 174.) If it can be argued that the empowering statutes encompass the power to order restitution, both Labor Code section 4622 and section 4625 specifically provide for restitution under certain circumstances, section 4622 when there has been adequate and timely protest of a billing, and section 4625 when there has been adequate and timely protest of a billing which does not comply with the relevant fee schedule.

requirement that restitution may only be ordered [when] Defendant Carrier [has demonstrated] payment was made under protest . . . ." On March 8, 1994, the Board denied reconsideration without further discussion. A timely, verified petition for writ of review followed, contending, among other things, that defendants had declared in correspondence with Pace at the time of payment that the sum they were willing to pay was a reasonable sum, and that defendants were therefore estopped from seeking restitution at a later time. (It does not appear that this circumstance was brought to the Board's attention on reconsideration. Issues not presented to the Board are considered waived in this court (*Cedillo* v. *Workmen's Comp. Appeals Bd.* (1971) 5 Cal.3d 450, 456 [96 Cal.Rptr. 471, 487 P.2d 1039]).)

### MEDICAL-LEGAL EXPENSES—THE GENERAL CONSTITUTIONAL MANDATE AND THE STATUTORY SCHEME PRIOR TO THE 1993 AMENDMENTS

The California Constitution, article XIV, section 4, enacted on June 8, 1976, provides, in pertinent part, that the Legislature shall have the power and the responsibility to provide a complete workers' compensation system which "includes adequate provisions for the comfort, health and safety and general welfare of any. and all workers and those dependent upon them for support to the extent of relieving from the consequences of any injury or death incurred or sustained by workers in the course of their employment, irrespective of the fault of any party . . . ."

Section 4 of Article XIV of the state Constitution sets forth in detail the components of such a system, including health care, insurance coverage, and an administrative structure, "to the end that the administration of such legislation shall accomplish substantial justice in all cases *expeditiously*, *inexpensively*, and without incumbrance of any character, all of which matters are expressly declared to be the *social public policy* of this State . . . ." (Italics added.)

■ Because the Legislature has exercised the power conferred upon it by California Constitution article XIV in providing for WCJ's and the Board, constitutional provisions governing the state judicial system contained in article VI have no application in the workers' compensation system, and the jurisdictional provisions of the workers' compensation law are of "limited scope." (*Greener* v. *Workers' Comp. Appeals Bd.* (1993) 6 Cal.4th 1028, 1041 [25 Cal.Rptr.2d 539, 863 P.2d 784].) And, as was explained in *DuBois* v. *Workers' Comp. Appeals Bd.* (1993) 5 Cal.4th 382, 388 [20 Cal.Rptr.2d 523, 853 P.2d 978], "The right to workers' compensation benefits is wholly statutory and is not derived from common law."

We turn to the statutory scheme enacted by the Legislature to provide workers' compensation to California workers. The litigation expense described as medical-legal expense in Labor Code section 4620 is included in

the benefits and protections offered to applicant/employees under the workers' compensation system. "[A] lien claimant's right to medical-legal costs [is] derivative of the employee's rights." (*Beverly Hills Multispecialty Group, Inc.* v. *Workers' Comp. Appeals Bd.* (1994) 26 Cal.App.4th 789, 803 [32 Cal.Rptr.2d 293].) The circumstances under which it is properly incurred and must be paid by employers/carriers is wholly within the purview of the Legislature and such delegation of administrative authority as it deems proper.

We set forth the pertinent provisions of Labor Code sections 4620 through 4625, which deal with payment of medical-legal expenses and particularly those dealing with the circumstances under which such payments may be recovered by employer/carriers from medical providers after they have been made, bearing in mind certain rules of statutory construction.

The rules are well summarized in *DuBois* v. *Workers' Comp. Appeals Bd.*, *supra*, 5 Cal.4th at pages 387-388: "A fundamental rule of statutory construction is that a court should ascertain the intent of the Legislature so as to effectuate the purpose of the law. [Citations.] In construing a statute, our first task is to look to the language of the statute itself. . . . When the language is clear and there is no uncertainty as to the legislative intent, we look no further and simply enforce the statute according to its terms. [Citations.] [¶] Additionally, however, we must consider . . . the context of the entire statute . . . and the statutory scheme of which it is a part. . . . '[T]he various parts of a statutory enactment must be harmonized by considering the particular clause or section in the context of the statutory framework as a whole. . . .' "

This last rule is of utmost importance in the task we have undertaken here, given the efforts of the Legislature in successive years from 1989 forward, to reform certain aspects of the workers' compensation system, including payment of medical-legal expenses.

We have noted that Labor Code former section 4620 defined medical-legal expenses as those incurred "for the purpose of proving or disproving a contested claim."[12]

 Labor Code section 4622 provided in 1990 and 1991, as it does now, that protests by employers/carriers to the payment of medical-legal expenses

---

[12]Labor Code former section 4621 provided for reimbursement of the employee or the dependents of a deceased employee for medical-legal expenses "reasonably, actually, and necessarily incurred. The reasonableness of, and necessity for, incurring these expenses shall be determined with respect to the time when the expenses were actually incurred. . . ."

to medical providers must be made within 60 days. The legislative history of Labor Code section 4622 demonstrates that the purpose of Labor Code section 4622 (and of its predecessor statute of 1976, Lab. Code, § 4601.5, which contained substantially similar language) was to ensure that the bills of medical providers were promptly paid, and that protests or objections to the bills were promptly raised and adjudicated.[13] The concern of the Legislature to ensure prompt payment has not only applied to medical-legal evaluations and reports, but to treatment costs as well. (See Lab. Code, § 4603.2, as amended by Stats. 1990, ch. 770, § 3, p. 3470.)

While no prior appellate court has had occasion to interpret Labor Code section 4622, the Board considered its predecessor statute in the in bank decision of *Otis* v. *City of Los Angeles, supra,* 45 Cal.Comp.Cases 1132, a decision which it has never overruled. *Otis* held that pursuant to the statute, in order to contest the reasonableness or necessity of medical-legal expenses incurred by an injured employee, a contesting employer/carrier must (1) file a written objection within 60 days from receipt of the bill, (2) provide a copy to the health care provider and the employee or his attorney, and (3) clearly set forth the reasons for the objection. *Otis* set forth in some detail legislative concerns and considerations in enacting the predecessor to Labor Code section 4622. (See also *Willis* v. *City of Los Angeles* (1982) 47 Cal.Comp.Cases 759.)

The reasoning of the *Otis* decision continues to be sound and in keeping with the constitutional objective of providing workers' compensation benefits expeditiously. It is of more than theoretical importance in the workers' compensation system that medical providers be paid promptly and treated fairly, for without them the entire benefit system would fail. The provisions for early protest as a requirement for subsequent recovery of medical-legal expenses paid to medical providers has reflected legislative recognition that medical providers not only render necessary services, they operate businesses which cannot be routinely dependent upon revenues subject to recovery by employer/carriers at some later unspecified time.[14]

Also at the pertinent times in the cases before us, Labor Code section 4625, as amended by Statutes 1990, chapter 1550, section 33, provided that

---

[13]See Labor Code former section 4601.5 (Stats. 1976, ch. 446, § 3, pp. 1180-1181) declaring that the statute was an urgency measure, necessary because "Physicians providing services to injured employees under the workers' compensation laws are often required to wait too long before receiving payment for those services. The effect of such delay is that many competent physicians are either unwilling or unable to provide the medical evaluations and care needed by injured workers in the State of California. . . ."

[14]Labor Code sections 4623 and 4624, which dealt with billing procedures and a rebuttable presumption concerning the reasonableness of medical-legal expenses, are not material to the issues before us and were repealed by Statutes 1993, chapter 4, sections 5, 6, effective April 3, 1993. Former section 4624 provided a rebuttable presumption of reasonableness with

fees for the reports which were "rebuttably presumed reasonable pursuant to . . . Section 4624 shall be paid promptly pursuant to Section 4622. If the employer contests the reasonableness of the charges, the employer may file a petition with the appeals board to obtain reimbursement of the charges."[15]

## THE 1993 AMENDMENTS

Effective April 3, 1993, the Legislature amended Labor Code sections 4620 and 4621 to declare there would be no liability on the part of employers/carriers for medical-legal evaluations performed prior to the time an employee's claim for workers' compensation was in dispute. The legislative perception was that enforcement of the "contested claim" rule was necessary to stem a rising tide of fraud and expense in the production of medical-legal reports. Even prior to 1989, efforts had been made to regulate the conduct of some medical-legal report providers. (See, e.g., *Crawford* v. *Workers' Comp. Appeals Bd.* (1989) 213 Cal.App.3d 156, 161-163 [259 Cal.Rptr. 414].)

The continuing legislative concerns were set forth in the Senate Ways and Means Committee Analysis of Senate Bill No. 31 (1993-1994 Reg. Sess.). It was noted that prereform, an injured employee could seek and obtain substantial medical-legal services for which an employer/carrier would be financially responsible before an employer even knew the employee was claiming an industrial injury, and that the remedy for this situation was the "contested claim" rule.[16]

Thus, Labor Code section 4620 was expanded in 1993 to render it crystal clear that an applicant could *not* seek medical-legal evaluations for which the employer/carrier would be financially responsible before the employer had received notice of the industrial claim and had had an opportunity to respond to it.[17] These major revisions were made by Statutes 1993, chapter 4, section 2 and section 3, respectively, effective April 3, 1993. Significantly, in

respect to charges for "initial comprehensive industrial medical-reports" which were within the fee schedule referred to in the statute.

[15]The amendment of section 4625 was described in Assembly Bill No. 2910 (1990-1991 Reg. Sess.) as one of "various technical, nonsubstantive changes" necessary to clarify the Margolin-Bill Greene Workers' Compensation Reform Act of 1989.

[16]There was emphasis in the analysis on the fact that medical-legal fees have become "a significant part of the total cost of workers' compensation" and dramatically increased even after the reform legislation of 1989.

[17]After amendment, the entire text of former Labor Code section 4620 was set forth in subdivision (a). Added was "(b) A contested claim exists when the employer knows or reasonably should know that the employee is claiming entitlement to any benefit arising out of a claimed industrial injury and one of the following conditions exists: [¶] (1) The employer rejects liability for a claimed benefit. [¶] (2) The employer fails to accept liability for benefits

section 10 of Statutes 1993, chapter 4 (Sen. Bill No. 31), it was stated "The amendments made by Sections 2 to 4, inclusive, of this act are declaratory of existing law."

In *Del Rio* v. *Quality Hardware* (1993) 58 Cal.Comp.Cases 147, 152, an opinion issued by the Board on April 20, 1993, the Board held that the rule precluding employer liability for medical-legal reports obtained before there was a "contested claim" was applicable to medical-legal evaluations obtained in 1991, because the 1993 amendments were "declaratory of existing law."

The Legislature also amended Labor Code section 4622, by adding subdivision (d), which provided: "Nothing contained in this section shall be construed to create a rebuttable presumption of entitlement to payment of an expense upon receipt by the employer of the required reports and documents. *This section is not applicable unless there has been compliance with Sections 4620 and 4621*." (Stats. 1993, ch. 4, § 4.) This amendment was also included among those sections of Senate Bill No. 31 which were to be considered as "declaratory of existing law."

At the same time, Labor Code section 4625 was rewritten to read: "(a) Notwithstanding subdivision (d) of Section 4628, all charges for medical-legal expenses for which the employer is liable that are not in excess of those set forth in the official medical-legal fee schedule adopted pursuant to Section 5307.6 shall be paid promptly pursuant to Section 4622. [¶] (b) If the employer contests the reasonableness of the charges *it has paid*, the employer may file a petition with the appeals board to obtain reimbursement of the charges from the physician that are considered to be unreasonable." (Italics added.) (This section was contained in section 7 of Stats. 1993, ch. 4,

---

after the expiration of a reasonable period of time within which to decide if it will contest the claim. [¶] (3) The employer fails to respond to a demand for payment of benefits after the expiration of any time period fixed by statute for the payment of indemnity. [¶] (c) Costs of medical evaluations, diagnostic tests, and interpreters incidental to the production of a medical report do not constitute medical-legal expenses unless the medical report is capable of proving or disproving a disputed medical fact, the determination of which is essential to an adjudication of the employee's claim for benefits. In determining whether a report meets the requirements of this subdivision, a judge shall give full consideration to the substance as well as the form of the report, as required by applicable statutes and regulations."

Labor Code section 4621 was similarly expanded and amended for medical-legal expenses for which the *employee* claimed reimbursement, and provided, in pertinent part in subdivision (b) that "no comprehensive medical-legal evaluations, except those at the request of an employer, shall be performed during the first 60 days after the notice of claim has been filed pursuant to Section 5401, and neither the employer nor the employee shall be liable for any expenses incurred for comprehensive medical-legal evaluations performed within the first 60 days after the notice of claim has been filed pursuant to Section 5401."

*not* subject to the "declaratory of existing law" provision applying to Lab. Code, §§ 4620, 4621, and 4622.)

## "DECLARATORY OF EXISTING LAW"

It is clear from the amount and placement of legislative revisions, amendments, and expansions in 1993, that the Legislature was engaged in a massive effort to strengthen and clarify the perceived weaknesses and ambiguities of the Margolin-Bill Greene Workers' Compensation Act of 1989. At issue in the cases before us is what impact, if any, the 1993 legislative enactments have on events occurring from 1990 to 1993, and whether they are to be retroactively applied.

■ An often expressed concept of statutory construction is that legislation looks to the future rather than the past, and will not be applied retroactively unless the intent of the Legislature to do so has been expressed very clearly. California has long followed this rule. (Civ. Code, § 3; *Aetna Cas. & Surety Co. v. Ind. Acc. Com.* (1947) 30 Cal.2d 388, 394-396 [182 P.2d 159]; *DiGenova v. State Board of Education* (1962) 57 Cal.2d 167, 176 [18 Cal.Rptr. 369, 367 P.2d 865]; 2 Sutherland, Statutory Construction, *supra*, § 41.04, fn. 4, p. 353.)

"[T]he question whether a statute is to apply retroactively or prospectively is, in the first instance, a policy question for the legislative body which enacts the statute." (*Evangelatos v. Superior Court* (1988) 44 Cal.3d 1188, 1206 [246 Cal.Rptr. 629, 753 P.2d 585].) We note that in all the alterations of the statutory scheme we have discussed herein, at no point did the Legislature *expressly* declare its intention that the alterations were to apply retroactively.

In a number of very important instances, however, the Legislature indicated that the changes it was making were "declaratory of existing law." ■ Theoretically, changes of this sort do not result in retroactive application at all, but merely clarify what is already in existence. As was explained in *Martin v. California Mut. B. & L. Assn.* (1941) 18 Cal.2d 478, 484 [116 P.2d 71], "[w]hile an intention to change the law is usually inferred from a material change in the language of the statute [citations], a consideration of the surrounding circumstances may indicate, on the other hand, that the amendment was merely the result of a legislative attempt to clarify the true meaning of the statute. [Citations.]" (See also *Balen v. Peralta Junior College Dist.* (1974) 11 Cal.3d 821, 828, fn. 8 [114 Cal.Rptr. 589, 523 P.2d 629]; *State Farm Mut. Auto Ins. Co. v. Vaughn* (1984) 162 Cal.App.3d 486, 489 [208 Cal.Rptr. 601].)

(It should also be noted that in the absence of the "existing law" exception, the California Supreme Court has upheld retroactive application of an amended law in the face of the argument that there was a presumption against retroactivity. In *In re Marriage of Bouquet* (1976) 16 Cal.3d 583, 587, 591-592 [128 Cal.Rptr. 427, 546 P.2d 1371], it was observed that the presumption only operates when legislative intent cannot be determined; legislative intent to apply a law retroactively may be ascertained by such factors as " 'context, the object in view, the evils to be remedied, the history of the times and of legislation upon the same subject, public policy, and contemporaneous construction.' " Significantly, the *Bouquet* decision dealt with an amendment affecting property rights, and stated that due process concerns could, under certain circumstances, be subordinated to considerations of public welfare.)

■ We conclude that the Legislature did intend, through the changes we have set forth in Labor Code sections 4620, 4621, and 4622, to clarify what was already in existence, thereby permitting the application of statutory law in a manner significant to the issues herein. ■ With respect to defining medical-legal expenses, even prior to 1990 the language of Labor Code section 4620 was that such expenses were incurred "for the purpose of proving or disproving a *contested claim.*" (Italics added.) Thus, the "contested claim" rule, whether generally observed or not, has been the governing principle in determining employer/carrier liability for medical-legal reports since at least January 1, 1990, when the Workers' Compensation Reform Act took effect. As we have indicated, the legislative perception was that observance of the "contested claim" would be beneficial to all participants in the workers' compensation system.

Application of this principle also means, however, that Labor Code section 4622, which provides that an employer/carrier must protest a medical-legal billing within 60 days of receipt, *has no application in its entirety when the medical provider has not complied with the "contested claim" rule*, because the Legislature so provided, in Labor Code, section 4622, subdivision (d), as amended in 1993.[18]

Labor Code section 4625, which operates in tandem with Labor Code section 4622, was not similarly limited by amendment in 1993, because it

---

[18]Amici curiae for petitioner APC have argued persuasively that the statutory scheme set forth in Labor Code section 4622, of protest as a prerequisite for restitution or reimbursement, is important and necessary to the processing of medical-legal claims, both past and future. We agree. Section 4622, as interpreted by *Otis, supra*, contains the governing procedure applicable in *all* cases except those which involve medical evaluations undertaken before a claim is contested. There the Legislature has indicated its determination to make an exception to the general rule, and we are compelled to follow it. (The *Otis* rule, however, precluded the Board

concerns excessive medical-legal fees rather than fees generated before the existence of a "contested claim." We deem the legislative intent was to provide for reimbursement of excessive charges as determined by the applicable fee schedule, including those paid under protest, pursuant to the procedures set forth in Labor Code section 4622. This interpretation results in harmonizing these provisions as a statutory scheme.

As indicated, the 1990 amendment to Labor Code section 4625, which provided for reimbursement, was considered nonsubstantive. The present section still refers back to section 4622 in subdivision (a). We have considered and rejected the interpretation of section 4625 proposed by respondents herein as a statute that, standing alone, permits reimbursement where medical legal fees have been generated in cases involving uncontested claims and have been paid without protest.

There is no specific direction to that effect by the Legislature, and the language used in the section would, with such interpretation, render it of *general* application not only to noncontested claims cases but to any medical-legal fee payment issue an employer/carrier might raise. If the limiting procedure of Labor Code section 4622 could be bypassed by reliance on section 4625 as so interpreted, general application of section 4625 would thus effectively repeal section 4622 by implication. In our view, it is unlikely that the Legislature intended such a result. There is a strong presumption against the implied repeal of a statute, and the presumption is recognized in California. (1A Sutherland, Statutory Construction, *supra*, § 23.09, pp. 337-352; § 23.10, pp. 353-354; see *Warne* v. *Harkness* (1963) 60 Cal.2d 579, 588 [35 Cal.Rptr. 601, 387 P.2d 377].)

### RESTITUTION

■ Because the statutory procedures set forth in Labor Code sections 4622 and 4625, including the limited right to reimbursement from medical-legal evaluators provided therein, do not apply in the cases before us, we consider whether the Board properly utilized the equitable doctrine of restitution to permit recoupment of the expenses paid after negotiation and without protest.

Restitution is an equitable remedy which has primarily been utilized by courts to prevent unjust enrichment. (Dobbs, Law of Remedies (1973) § 4.1,

from ordering restitution in the APC matter on the separate ground that Labor Code section 4628 has been violated.)

p. 224.) Under certain circumstances it has been held that administrative tribunals such as the Board may appropriately employ equitable remedies. (*McHugh* v. *Santa Monica Rent Control Bd.* (1989) 49 Cal.3d 348, 355-356 [261 Cal.Rptr. 318, 777 P.2d 91].) Such use by the Board would seem particularly justified, for example, when fraud has been charged and proven. (Ins. Code, § 1871.4, subd. (b); and see, e.g., *House* v. *Workers' Comp. Appeals Bd.* (1993) 58 Cal.Comp.Cases 354.)

The restitution orders before us must be considered in light of the appropriate equitable principles. Petitioner APC relies on *City of Hope*, *supra*, but that situation is distinguishable from those before the court in an important respect. The hospital payee not only received payment in good faith, it was under no duty to investigate the extent of or the limitations on the coverage the payor owed the insured. Knowledge of an insured's private insurance coverage and knowledge of laws directly conferring entitlement on the payees herein to payment under the workers' compensation laws are not the same. APC and the other medical providers surely were aware, or should have been aware, that the reform legislation was effective January 1, 1990, and would have significant impact on the way they conducted their business. There is no suggestion in this record that APC or the other medical lien claimants sought or received guidance, legal or otherwise, on the propriety of submitting the claims in question.

This is not the only consideration, however. The *payors* were as chargeable with the knowledge of and the risks attendant on the changes in the law as the payees were. There is no suggestion they were acting pursuant to guidance, legal or otherwise, either. While quick to accuse the medical providers of fraud (although violation of a statute does not necessarily constitute the intentional misrepresentation which is the principal element of charged and proven fraud), the employer/carriers paid these bills for services rendered in uncontested claims cases without protest, and indeed after negotiating reductions in the billings they had received—reductions accepted by the payees. (It was apparently "business as usual" for all parties concerned.)

Equity often leaves parties similarly innocent, similarly confused or similarly knowledgeable about the law in the positions in which they find themselves. Confusion or mistake about the law offers no comfort to either side in these disputes before the court. "[I]t is generally well settled that where a person with full knowledge of the facts voluntarily pays money under a mistake of law on a demand not legally enforceable against him, he cannot recover it in the absence of unjust enrichment, fraud, duress, or

improper conduct of the payee." (66 Am.Jur.2d, § 138, p. 1070; accord, 55 Cal.Jur.3d, Restitution, § 10, p. 318.)

More modern doctrine is that mistakes of law and mistakes of fact (where restitution is often ordered) should be treated alike, and it emphasizes the importance of other factors in determining whether restitution should be granted. (*First Sav. & Loan Assn.* v. *Bank of America* (1970) 4 Cal.App.3d 393, 395 [84 Cal.Rptr. 532].) Such factors as detrimental change of position, hardship, the implementation of some important public policy or transactional stability are considered. (Dobbs, Law of Remedies, *supra*, § 11.9, pp. 767-772.)

The passage of time involved in the present cases—between payment and attempted recoupment—suggest the likelihood that substantial changes in financial position took place. "[I]n cases where the plaintiff and the defendant are equally to blame for the mistake under which the money was paid, or equally innocent in respect thereto, an alteration of position on the part of the payee is held to prevent liability in an action for recovery." (66 Am.Jur.2d, § 135, p. 1066.)

It has to be possible to eliminate fraudulent claims for medical-legal evaluations without destroying the entire workers' compensation system. Of most concern here is the element of transactional stability. We believe transactional stability an important element of any benefit system. Approving restitution in these cases would set a precedent which would have unfortunate consequences for the workers' compensation system. It would introduce the possibility of continued transactional instability so negative it would impact the number of medical providers willing any longer to participate in the system by evaluating workers with industrial injuries. No one can operate a business on receipts only conditionally possessed, and medical providers are no exception. Thus we have determined the restitution orders were unfair and must be annulled.

DISPOSITIONS

In American Psychometric Consultants, Inc. v. Workers' Compensation Appeals Board, WCAB Nos. LBO 237156 and LAO 647403, No. B081157, the order of the Workers' Compensation Appeals Board of November 29, 1993, is annulled.

In Apex Medical Group v. Workers' Compensation Appeals Board, WCAB No. LBO 227963, No. B081241, the order of the Workers' Compensation Appeals Board of December 6, 1993, is annulled.

In Pace Medical Group v. Workers' Compensation Appeals Board, WCAB No. Mon 153379, No. B083331, the order of the Workers' Compensation Appeals Board of March 8, 1994, is annulled.

Johnson, J., and Woods (Fred), J., concurred.

A petition for a rehearing was denied August 6, 1995, and respondents' petition for review by the Supreme Court was denied November 22, 1995.